THE TEXAS & THE MISSISSIPPI RIVER, CANAL, AND NAVIGATION CO. v. THE COUNTY COURT OF GALVESTON COUNTY.

1. CONSTITUTIONAL LAW—TAXATION.—During the continuance of the Constitution of 1869, the authority of the county to aid in the construction of works of internal improvement was derived from that instrument. The particular mode in which the power could be exercised not having been prescribed by the Constitution, could be provided for by the legislative department.

2. CONSTITUTIONAL LAW.—REGISTRATION—There was nothing in the Constitution of 1869 to prohibit the Legislature from passing registration laws not inconsistent with its provisions.

3. CONSTITUTIONAL LAW—LEGISLATIVE ACT.—Whether an act concerning private corporations, passed December 2, 1871, (Paschal's Dig., vol. 2, p. 1214,) without an enacting clause, which was required by the Constitution of 1869, was a valid legislative act, discussed.

4. PRIVATE CORPORATIONS.—A company organized by voluntary association, for the purpose of constructing, operating, and owning a canal, and for the purpose of navigation by such vessels as the directory of the company might deem proper, between the waters of Galveston bay and those of Sabine lake, and the tributaries thereof and therein, to the navigable waters of the Mississippi river, and to the end that steamboat navigation might be established between Galveston bay and said river and its tributaries, was not such an enterprise as could be incorporated under the act of December 2, 1871, (Paschal's Dig., p. 1214,) concerning private corporations.

5. CONSTRUCTION OF STATUTES—PRIVATE CORPORATIONS.—The act concerning private corporations, of December 2, 1871, after describing the many purposes for which private corporations might be created, concludes with the following general clause : " for any other purpose intended for mutual profit or benefit not otherwise especially provided for, and not inconsistent with the Constitution and laws of this State :" *Held*, That the general clause is controlled by the subject to which it relates, and refers to objects of the character of those named in the act.

6. CONSTRUCTION OF STATUTES—RETROACTIVE LAW.—The act of April 23, 1873, which attempted to validate the act of December 2, 1871, concerning private corporations, "as fully as if said act had contained in the first section thereof the legal enacting clause," could not enlarge the powers of corporations created under the provisions of the act of December 2, 1871.

7. PRIVATE CORPORATIONS.—Under the act of June 2, 1873, entitled " An act to promote the speedy construction of a canal between the waters of Galveston bay and Sabine lake, and in aid thereof," the Texas and Mississippi River, Canal, and Navigation Company could not have enjoyed the immunities and privileges attempted to be secured by that act by virtue of its articles of association in any capacity, whether as a corporation, a joint stock company, or as individuals, and this, even if the act of December 2, 1871, had contained the legal enacting clause.

8. MANDAMUS.—The equitable rights of the Texas and Mississippi River, Canal, and Navigation Company, growing out of its articles of incorporation and dealings with the county of Galveston, were not such as can be enforced by *mandamus*.

18

ERROR from Galveston.   Tried below before the Hon. A. P. McCormick.

Suit for a *mandamus,* to compel the issuance of bonds of Galveston county, by virtue of a vote of seven hundred and four voters of that county, in July, 1872, in favor of a gratuitous donation or subsidy of five hundred thousand dollars to a company organized by voluntary association in February, 1872, "to be known as the Texas and Mississippi River, Canal, and Navigation Company."

"For the purpose of constructing, operating, and owning a canal, and for the purpose of navigation by such vessels as the directory may deem proper, between the waters of Galveston bay and those of Sabine lake, and the tributaries thereof, by the most practicable route passing through the counties of Galveston, Chambers, and Jefferson in said State, and thence by the most feasible route to the navigable waters of the Mississippi river, to the end that steamboat navigation may be established between Galveston city and said river and its tributaries."

It was alleged in the petition that under an act of the Legislature approved April 12, 1871, entitled "An act to authorize counties, cities, and towns to aid in the construction of railroads and other works of internal improvement," the plaintiff in error, on 25th June, 1872, made application by petition as required by said act, proposing to construct a canal from the waters of Galveston bay to Sabine pass, provided the county of Galveston would aid such enterprise by a donation of bonds of the county, as prescribed in said proposition ; that the proposal was submitted, according to said act, to the qualified electors of said county, and special registration provided to ascertain the same at that time, under act of 30th of May, 1871; that the election was held, as recited in the minutes of the court of August 5, 1872, and 26th August, 1872; that the County Court received the report of the managers of the election, and decided, upon consideration, (August 26, 1872,) that said proposition had been accepted

by more than two thirds of the registered voters, and that the same had carried. And thereupon said court attempted, according to the provisions of the act of April 12, 1871, to give practical effect to the proposition so voted for, by providing for the issuance of bonds of Galveston county, (according to the terms of said proposition,) to be delivered to plaintiffs in error as the proposed work was completed from time to time, and assessing and providing for the collection of a tax to meet the interest coupons, and provided a sinking fund to pay the same.

It was also alleged that on 26th of August, 1872, plaintiff undertook, by written obligation to said county, to commence and complete said canal, according to the terms of said accepted proposition.

Also, that "plaintiff in error" proceeded, in good faith, to perform his undertaking therein, and on October 11, 1873, notified defendant of the completion of five miles of said work, according to contract, and requested the appointment of a commissioner to examine, inspect, and report upon the same; that the commissioner was appointed, and on October 22, 1873, reported to defendant in error that said work had been completed fully, in accordance with said contract.

That on the 10th of November, 1873, plaintiff in error applied to defendant in error for the bonds provided for, for the completed five miles. The application was refused, no reason being assigned therefor; and thereupon the petition for *mandamus* was filed.

Defendant in error demurred to the petition and amendment of plaintiff, and stated several grounds of special exception, which were sustained. To correct the supposed error in this ruling the writ of error was sued out.

The grounds of special exception were substantially as follows, viz:

1. Plaintiff was not a corporate body at the time the proposition was submitted and the contract made, nor when suit was filed.

2. The law of May 30, 1871, providing for special registration is contrary to the Constitution, and void; and the proposition of plaintiff in error was submitted to voters qualified according to that registration.

3. The act of April 12, 1871, under authority of which the proposition was made and (as alleged) accepted, is unconstitutional and void—in this, that the Constitution, art. 12, sec. 32, contemplates that the amount of tax to be assessed and levied on internal improvements should be the precise question submitted to a vote of qualified electors, and not whether the county will aid a named enterprise in a gross amount upon stated terms.

4. That the undertaking upon the part of the county of Galveston was a "*nudum pactum,*" and therefore void.

5. That the contemplated improvement not being confined exclusively to the county of Galveston, is not an improvement authorized by law to be aided by the county of Galveston.

6. That the County Court of Galveston county subsequently changed upon its minutes the recitations and orders of August 26, 1862, to wit, on the 31st of January, 1873, and that such rescission was the judgment of a court of competent jurisdiction, and is not appealed from.

7. That plaintiffs' petition is vague and uncertain, stating nothing in fact upon which he can claim anything at law.

On the 2d of June, 1873, the Legislature passed (Special Laws, p. 744) "An act to promote the speedy construction of a canal between the waters of Galveston bay and Sabine lake, and in aid thereof," the first section of which provided that the Texas and Mississippi River, Canal, and Navigation Company of Galveston, incorporated on the 17th of March, 1872, under and in accordance with the provisions of the act concerning private corporations, approved December 2, 1871, shall be and is hereby invested with the right of locating, constructing, owning, operating, and maintaining a canal and line of inland water communication, commencing at Hanna's

Reef, on the east bay of Galveston bay, and thence by the line that may be found best and most practicable for a connection at Sabine lake, at or near to Sabine city—said canal to be not less than fifty feet wide and six feet deep; and said company shall have the right to cross all public highways, and to deepen, straighten, or otherwise improve the navigation of all streams across or along the course of which it may be necessary to construct said canal, etc.  *  *  *  *Provided,* That nothing contained in this act shall in any wise validate or invalidate any subsidy, real or pretended, from the county of Galveston."

Said act conferred the right of appropriating public or private property on compensation, etc., and gave a land grant to the company. A more precise statement of the case is not necessary.

*Flournoy, Sherwood & Scott,* and *T. N. Waul,* for plaintiff in error.

I. The absence of the enacting clause is directory to the Legislature, and without negative words, does not render the act void. (Cape Girardeau *v.* Riley, 52 Mo., 424.; St. Louis *v.* Foster, 52 Mo., 513; Miller *v.* State, 3 Ohio, N. S., 483; People *v.* Superv. of Chenango, 8 N. Y., 328; Rex *v.* Loxdale, 1 Burr, 447.)

II. That sec. 27, art. 5, of the act "concerning private corporations," authorizes the formation of a private corporation, to dig a canal for the purposes of navigation.

The rule is universal that when a law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature should be intended to mean what they have plainly expressed, and, consequently, no room is left for construction. (Cooley on Con. Limitation, 55; People *v.* Purdy, 2 Hill, 35; Benton *v.* Wickwire, 54 N. Y., 226; Denn *v.* Reid, 10 Peters, 524; Bosley *v.* Mattingly, 14 B. Monroe, 89; Newell *v.* The People, 7 N. Y., 97; Enckling *v.* Simmons, 28 Wis., 272; Lacey *v.* Moore, 6 Coldw., (Tenn.,) 348.)

If in the same act there be one clause which applies to a particular case, and another which is couched in general terms, the former shall not restrain the signification of the latter. (Dwarris on Statutes, 659; Gregson *v.* Harrison, 2 Term R., 164; Statute 19, Geo. II, ch. 37, vol. 20, 511.)

III. That the contract entered into between plaintiff and defendant is binding on the county of Galveston.

When a party contracts with what assumes to be a corporation, he is not permitted to deny its existence as a corporation at the date of the contract, or to allege any defect in its organization as affecting its capacity to contract or sue, and such objections are only available by the State. (Cochran *v.* Arnold, 58 Penn., 405; Wright *v.* Shelby R. R., 16 B. Mon., 4; Cathcart *v.* Robinson, 5 Peters, 280; Palmer *v.* Lawrence, 3 Sandf., 161; McBroom *v.* Lebanon, 31 Ind., 268; Fay *v.* Noble, 7 Cushing, 188; Foster *v.* Walton, 5 Watts, 378; Steam Navigation Co. *v.* Weed, 17 Barb., 378.)

IV. The act of June 2, 1873, extending the privileges and recognizing the plaintiff, had the effect to merge or consolidate the original corporation or partnership (if not previously incorporated) with the new corporation, by which a new entity is created, to which pass the rights and obligations of the old entity. (Johnston *v.* Crawley, 25 Ga., 316; Paine *v.* Lake Erie & Louis Railroad Co., 31 Ind., 283; Miller *v.* Lancaster, 5 Coldw. (Tenn.,) 514; Columbus Railroad Co. *v.* Powell, 40 Ind., 37; Min. and Quar. Co. *v.* Windham Co., 44 Vermont, 489; Hill *v.* Beach, 12 N. J. Eq., 31, 1 Bens. 31.)

V. In conclusion, the contract made by plaintiff, with the county of Galveston was binding upon both parties, whether the plaintiff was a corporation or a partnership. The plaintiff took the risk of its ability to complete the work according to the contract; and if any doubt of its ability had existed, that doubt was removed by the act of the Legislature of June 2, 1873, recognizing their former charter and bestowing all the power and franchises necessary not only to complete the

contract, but also to exercise the privileges assumed in the charter as originally framed.

If the plaintiff, in its original charter or articles of partnership, claimed rights and privileges to which it was not legally entitled or even beyond the power of the Legislature to grant, the defendant had no right to complain, as no such extraordinary powers are asserted in or claimed under the contract; and should the plaintiff encroach upon the rights of the United States in its navigable waters, or attempt, without warrant of law, the exclusive navigation of the canal, the United States within its jurisdiction, or the State of Texas when called upon, would readily come to the assistance of the party aggrieved; and, moreover, if the plaintiff has mistaken its rights and its power to control the navigation of the canal, or to take toll thereon, it will be plaintiffs' loss, and the gain of defendant and the public, as the intercourse between the port of Galveston and the Sabine will be opened, a stupendous work performed, and a thoroughfare established free of cost.

*W. E. Delaney*, also for plaintiff in error, filed a lengthy written argument.

*Ballinger, Jack & Mott*, for plaintiff in error, cited *King v. Wallis*, 5 Term R., 375, as furnishing the rule for construing a general word when found in a statute following particular ones; also 2 Pars. on Cont., 501–7; Barn. & C., 96; 8 Ad. & E., (N. S.,) 55; Eng. Crim. Law, 463; *Jackson v. Stephens*, 16 Johns., 114; Story on Agency, sec. 62; *Attwood v. Munnings*, 7 B. & C., 284.

They contended that the appellant was utterly devoid of all the attributes and franchises of sovereignty which would entitle it, in carrying out its purposes of navigation, to appropriate under existing law the results of taxation, citing The Topeka Case, 20 Wall., 655; Cooley on Tax., 94; Dillon on Mun. Corp., sec. 105; 21 Penn., 22.

Much of the able and exhaustive brief of appellees' counsel referred to questions not decided in the opinion, and the authorities cited bearing on them are therefore omitted.

REEVES, ASSOCIATE JUSTICE.—On the 26th day of August, 1872, the County Court of Galveston county made the following orders:

"Be it remembered, that on the 25th day of June, A. D. 1872, a petition, signed by not less than fifty freeholders of Galveston county, was presented to said court, under and by virtue of authority of an act of the Legislature of the State of Texas, entitled 'An act to authorize counties, cities, and towns to aid in the construction of railroads and other works of internal improvements,' approved April 12, 1871, to take the vote of the electors of said county upon a proposition that said county should aid the Texas and Mississippi River, Canal, and Navigation Company in the construction of a canal and line of water communication from Galveston bay to Sabine pass, by making a donation to said company of seven thousand five hundred dollars per mile from Galveston bay to Sabine pass, in the bonds of said county, payable in twenty years from date, with interest at ten per cent. per annum, payable semi-annually, and providing that the entire distance of the canal and line of water communication shall not exceed seventy miles in length; and in the event it shall be less than seventy miles, the donation shall only be required for the actual number of miles on the line; the bonds to be issued after the completion of each section of five miles.

"And on the 25th day of June, A. D. 1872, said petition coming on to be heard in said court, upon due consideration, the following order was made by said court, to wit: 'It is ordered by this court that an election shall be held in the county of Galveston, at the court-house thereof, on the 27th day of July, 1872, for the purpose of taking the opinion of the electors of said county for or against the proposition that Galveston county make a donation of seven thousand five

hundred dollars per mile, in the bonds of said county, bearing ten per cent. interest, payable semi-annually, the bonds to be issued in accordance with an act entitled "An act to authorize counties, cities, and towns to aid in the construction of railroads and other works of internal improvements," approved April 12, 1871, and to be payable in twenty years after the date of their issuance to the Texas and Mississippi River, Canal, and Navigation Company,' for the purpose of aiding the said company in constructing a canal and line of water communication from Galveston bay to Sabine pass.

"'And it is further ordered that G. W. Grover, William McQuinn, Robert Smearback, be and they are hereby appointed managers to conduct the said election, which election shall begin on the 27th day of July, and continue four days—Monday, July 29; Tuesday, July 30; Wednesday, July 31; and the said managers shall make return thereof to this court within four days from the last day of said election; and it is further ordered that this order be published in the Galveston Civilian, a newspaper printed in said Galveston county, for three weeks previous to the election.'"

And afterwards, at a special term of the County Court, the following order was made:

"Be it remembered, that on this, the 5th day of August, 1872, being the first Monday after the closing of the special election ordered upon the proposition of the Texas and Mississippi River, Canal, and Navigation Company, all the members of the court being present, and the managers of the special election having duly made a report and return to this court of the results of said election, with the ballots and records of persons who voted, it is adjudged that it appears therefrom that there were one thousand and forty electors duly registered for said election, and that of these 730 voted at said election—704 for the proposition, and 26 against the proposition—and that, therefore, two thirds of the registered voters have voted for the proposition, and that the same is carried," &c.

"It is ordered, adjudged, and decreed by the County Court in and for Galveston county, as authorized and required by law, that upon the completion of each section of five miles of said canal and line of water communication by the said Texas and Mississippi River, Canal, and Navigation Company, according to the terms and stipulations contained in the proposition hereinbefore recited, and a report of the same made to this court as therein recited, the County Court of Galveston county will issue and deliver, or cause to be issued and delivered, unto said company, or to any one duly authorized by the said company to receive and receipt for the same, county bonds of the county of Galveston of the denominations of one thousand dollars and five hundred dollars, with semi-annual interest coupons attached thereto, at the rate of ten per cent. per annum, said interest maturing on the first days of January and July of each and every year, said bonds to be executed, issued, registered, and the payment of the same provided for as required by the provisions of said act of the Legislature, approved April 12, 1871, and to be payable twenty years from and after the date, in lawful money, to bearer.

"That said bonds, so to be issued and delivered, shall be to the amount of seven thousand five hundred dollars per mile for each and every mile of said canal and line of water communication aforesaid, completed as aforesaid, but in no event for a greater number of miles than seventy miles; and if the actual number of miles on said canal and line of water communication be less than seventy, then only for such actual distance.

"And it is further ordered, adjudged, and decreed by the court, that a special annual tax of one fourth of one per cent. shall be levied and assessed upon all real and personal property situated in the county of Galveston, to provide a fund, as required by law, to pay the annual interest, and two per cent. as a sinking fund for the payment of the principal of such bonds as may be issued to said company during the en-

suing year, to wit, A. D. 1873, and to pay the expenses of assessing and collecting the same.

"The action of the court herein, is based upon and controlled by the acts of the Legislature of April 12, 1871, and of May 31, 1871, the latter requiring special registration."

On the 11th of October, 1873, the president of the company reported to the Circuit Court that five miles of canal between Galveston bay and Sabine pass was ready for use, being the required width and depth, and asked the court to appoint a commissioner to examine, inspect, and report upon the work.

The commissioner appointed by the court to examine the work reported, on October 22, 1873, that there were completed five miles of canal and water communication through and from Hanna's reef towards Sabine pass, fifty feet in width and six feet and over in depth.

On November 10, 1873, the president of the company, by written application, asked the court to issue the bonds to the company. On the same day the application for the issuance of the bonds was refused by the County Court.

The authority of the court to aid in the construction of works of internal improvements is derived from the Constitution. This power is conferred by section 32, article 12, of the Constitution, which is as follows: "Sec. 32., The inferior courts of the several counties in this State shall have the power, upon a vote of two thirds of the qualified voters of the respective counties, to assess and provide for the collection of a tax upon the taxable property, to aid in the construction of internal improvements: *Provided,* That said tax shall never exceed two per cent. upon the value of such property."

The power to assess and collect the tax, not to exceed two per cent. upon the value of the taxable property of the county, is subject to a vote of two thirds of the qualified voters of the county. The particular mode in which the power shall be exercised is not prescribed by this section, and the Legis-

lature may therefore regulate its exercise by the passage of such laws as may be necessary for that purpose, not inconsistent with this provision of the Constitution. The act of April 12, 1871, and the act of May 31, 1871, have reference to this section of the Constitution.

The act of April 12, to authorize counties, cities, and towns to aid in the construction of railroads and other works of internal improvements, provides for an election, upon the petition of not less than fifty freeholders of the county, to take the opinion of the voters on a proposition that the county shall aid in the construction of any proposed work of internal improvement, either by taking stock, making a loan, or making a donation thereto.

If two thirds of the qualified voters of the county vote for the proposition, it is made the duty of the County Court to issue bonds of the county, to draw interest not exceeding ten per cent. per annum, and to levy a tax upon all real and personal property in the county, not exceeding two per cent. on the assessed value in any one year.

A proposition showing the amount of the donation, payable in the bonds of the county and describing the extent and nature of the improvements to be constructed, is virtually a proposition that the county should pay the bonds by taxation. In no other way can a county pay its bonds.

The action of the County Court, as declared in its order of August 5, 1872, was based upon and controlled by the acts of April 12 and May 31.

There is nothing in the Constitution to prohibit the Legislature from passing registration laws not inconsistent with its provisions. In the exercise of this right, the Legislature enacted the law of May 31, requiring a special registration of voters, and declaring who should be considered qualified voters at any election held under the provisions of the act of April 12.

To ascertain who were qualified voters, the registrar was required to make a special registration of the qualified voters—

the registration to be conducted in accordance with the provisions of the act of July 11, 1870.

By the 5th section of the act, it is provided "that persons duly registered and holding certificates of special registration, issued under the provisions of this act, shall be deemed qualified voters, and it shall not be deemed lawful for any person not so registered and holding such certificate of registration to vote upon a proposition at any election held under and by virtue of the provisions of 'An act to authorize counties, cities, and towns to aid in the construction of railroads and other works of internal improvement.'" (Approved April 12, 1871.)

This act confines the right to vote on a subsidy to those who have a certificate of special registration. The right to register applies to all who are otherwise qualified to vote. (Article 3, sec. 1, article 6, sec. 1, Const. of 1869.)

The allegation in the answer that two thirds of the qualified electors did not vote for the proposition was a question of fact, and did not properly arise on demurrer to the petition.

The other objections, so far as may be regarded as necessary to the case, will be considered together.

The defendant denies that the plaintiff was a valid corporation under the laws of the State at the time the donation was made, and denies that the act of December 2, 1871, under which the association organized, was a valid law, for want of an enacting clause.

The plaintiff insists that the want of an enacting clause was a clerical error, and was corrected by the act of April 23, 1873.

1. Whether the act of December 2 was a valid act for want of an enacting clause, as prescribed by the Constitution; and—

2. Whether the act authorized the voluntary incorporation of a canal company, such as the plaintiff.

The charter of the plaintiff as a corporation, under the

act of December 2, 1871, was filed in the office of the Secretary of State, February 28, 1872.

In addition to the charter, the plaintiff, by an amended petition, alleged that the company was duly incorporated by an act of the Legislature passed June 2, 1873, and that said act relates back to the original association.

In the original petition the plaintiff claims to be a corporation duly chartered under the Constitution and laws of the State, and prays for a *mandamus* to compel the County Court of Galveston county to issue the bonds voted by the county to the plaintiff in aid of the construction of the canal.

On the 23d of April, 1873, the Legislature passed an act amending the first section of the act of December 2, 1871, with an enacting clause, and providing that all companies incorporated prior to the passage of the act of April 23, in accordance with the provisions of the act of December 2, should be validated as fully as if said act had contained the legal enacting clause.

It is contended that the act of April 23 is not retrospective in the sense of the constitutional inhibition. The authority of the Legislature to pass retrospective laws in certain classes of cases has been upheld as not being opposed to this constitutional provision.

Judge Cooley, in his Treatise on Constitutional Limitations, (p. 371,) gives as examples of these classes "statutes to cure irregularities in the assessment of property for taxation and the levy of taxes thereon; irregularities in the organization or elections of corporations; irregularities in the votes or other action of municipal corporations, or the like, where a statutory power has failed of due execution, through carelessness of officers or other cause; irregular sessions of courts," &c. The learned judge collects the cases on this point in his notes on page 371.

The Constitution of this State declares that the style of the laws shall be: "Be it enacted by the Legislature of the State of Texas."

In the case of The State v. Delesdenier, 7 Tex., 94, the court said that the same clause in the Constitution of 1845 was inapplicable to a resolution, order, or vote, as contradistinguished from a bill.

In Swann v. Buck, 40 Miss., 292, the question was whether a resolution was void for want of an enacting clause. The style of the laws, as required by the Constitution, was, "Be it enacted by the Legislature of the State of Mississippi." The style of the resolution was, "Resolved by the Legislature of Mississippi." The court held "that the requirement of the Constitution was substantially complied with, and the will of the Legislature sufficiently declared."

In Vinsant, Adm'r, v. Knox, 27 Ark., 286, the court held "that the Constitution must be substantially complied with, and that any law or act without the enacting clause is null and void."

In the case of McPherson v. Leonard, 29 Maryland, 389, it was held that the enacting clause is directory and not mandatory, and that its omission does not render the act void.

Cushing, in his work on the Law and Practice of Legislative Assemblies, (sec. 2102,) says: "Where enacting words are prescribed, nothing can be a law which is not introduced by those very words, even though others which are equivalent are at the same time used."

The judge who delivered the opinion of the court in the case of The People v. Lawrence, 36 Barb., (N. Y.,) 185, says: "I am not aware that any court in this State has yet felt constrained or even authorized to hold any provision of the Constitution to be merely directory."

The Constitution of Texas, as is the case of most, though not all, of the other States, has prescribed the style and even the words of the enacting clause.

The same thing is done in the requirement that the style of all writs and process shall be, "The State of Texas," and that all prosecutions shall be carried on in the name and by

the authority of the "State of Texas," and shall conclude "against the peace and dignity of the State."

It is not necessary in the present case to express an authoritative opinion on this question, and none is expressed. I have not found any authorities on the question not referred to in the very able briefs of counsel on both sides of the case.

Does the act of December 2 authorize the company to construct a canal for the purposes mentioned in the charter of 1872? The charter declares:

1. That the corporation shall be known as the "Texas and Mississippi River, Canal, and Navigation Company."

2. "Said corporate body is organized for the purpose of constructing, operating, and owning a canal, and for the purpose of navigation by such vessels as the directory may deem proper, between the waters of Galveston bay and those of Sabine lake, and the tributaries thereof, by the most practicable route, passing through the counties of Galveston, Chambers, and Jefferson, in said State, and thence by the most feasible route to the navigable waters of the Mississippi river, to the end that steamboat navigation may be established between Galveston city and said river and its tributaries."

3. Said corporate body shall exist as such, and perform the purposes of its organization, for the period of ninety-nine years, unless sooner dissolved, as provided in said act.

4. This article relates to the principal office and other offices of the company.

5. Provision is made for the directors of the company.

6. "The capital stock of said company shall be five hundred thousand dollars, divided into shares of one hundred dollars each."

7. "The powers and duties of said company, and the mode of conducting and operating its affairs, shall be in accordance with the provisions of the above-named act." (December 2, 1871.)

By the first section of the above-named act, it is declared that corporations are public or private.

"Sec. 2. A public corporation is one that has for its object the government of a portion of the State."

"Sec. 3. Private corporations are of three kinds: first, religious; second, corporations for charity or benevolence; and third, corporations for profit."

The fourth section provides that private corporations may be created by the voluntary association of three or more persons for the purposes and in the manner mentioned in the act.

By the fifth section the purposes for which private corporations may be formed are specified, and numbered from one to twenty-six and twenty-seven, (27:) "For any other purpose intended for mutual profit or benefit not otherwise especially provided for, and not inconsistent with the Constitution and laws of this State."

Among the different objects enumerated are the construction and maintenance of roads, except railroads and bridges connected therewith; telegraph lines, stages, &c; the building and navigation of steamboats, and carriage of persons and property thereon; street railways, (26;) "the construction and maintenance of canals for the purpose of irrigation or manufacturing purposes." (Paschal's Dig., art. 5935.)

Unless a canal for purposes of navigation, such as the one described in the charter of the plaintiff, is embraced in the general clause of the act, it is not otherwise provided for.

The various purposes for which private corporations may be created by voluntary association, are specified with great exactness and minuteness of detail.

In the main, the same works can be constructed without the aid of corporate powers.

The plaintiff claims the powers and franchises of a corporation for a purpose not expressed in the act and inconsistent with the purposes which are expressed.

A canal for irrigating or manufacturing purposes, has

scarcely any properties in common with the enterprise purposed by the charter of the plaintiff.

The object of the plaintiff, as declared by the charter, was to construct a canal between Galveston bay and Sabine lake, passing through several counties in the State, and finally to the navigable waters of the Mississippi river, to the end that steamboat navigation might be established between Galveston city and said river and its tributaries. Such an enterprise is not, we believe, provided for by the act of December 2. The general clause is controlled by the subject to which it relates, and refers to objects of the character of those named in the act.

No additional powers were conferred on the plaintiff by the amendatory act of April 23, 1873. It was intended by this amendment to validate the act of December 2, 1871, without enlarging the powers of corporations created under its provisions. If, then, no authority was given by the act of December 2 to make the canal in question, it cannot be maintained that such authority was given by the act of April 23.

The act of June 2, 1873, recognizes the plaintiff as a corporation, under the act of December 2, and authorizes the construction of the canal according to the terms of its charter of February or March, 1872, with a land grant and other important rights and privileges, such as no one, or any number, however large, or however associated, can exercise but by the sovereign authority of the State.

The company could not have performed these acts nor have enjoyed the immunities and privileges secured by this act of June 2, by virtue of its articles of association in any capacity, whether as a corporation, a joint stock company, or as individuals, if the act of December 2 had contained the legal enacting style.

The act of June 2 provides, "that nothing contained in this act shall in any wise validate or invalidate any subsidy, real or pretended, from the county of Galveston." It can

therefore have no influence on the decisions of this case, whatever may be the rights of the company in other respects.

It does not appear that the County Court, or the county of Galveston, had any agency in procuring the amendments to the act of incorporation, or that the county had acted upon the amendments and thereby incurred new liabilities to the company, and that the company had for that reason acquired rights not existing before. On the contrary, the County Court, as early as January, 1873, before any amendment was passed, had revoked its order levying the tax to pay the bonds, and it was not until the following October that the company reported to the County Court that five miles of the work had been completed. How much or whether any part of the canal was constructed before the revocation of the order does not appear. No time was fixed by the parties to begin the work. The bonds of the county were to be issued on the completion of each and every section of five miles of canal; and if any portion of the line was not completed at the end of the five years from the date of the acceptance of the proposition, the county was released from any donation for the unfinished part of the work. Taking the order of the County Court as fixing the date, the proposition was accepted August 5, 1872.

The equitable rights of the plaintiff were not such rights as may be enforced by *mandamus.*

Affirmed.