NATIONAL BANK OF JEFFERSON v. TEXAS INVESTMENT COMPANY, LIMITED, ET AL.

No. 6068.

1. **Pleading.**—Under the Texas system of pleading the fact that numerous issues are presented in a petition against a number of parties defendant, who are charged to have rendered themselves liable successively for the payment of a debt the collection

of·which is the only object of the suit, will not render the petition bad for multifarious-ness.

2. **Same—Case Distinguished.**—The petition should state the issuable facts on which the plaintiff relies for a recovery, though he is not restricted in his remedy by his averments of the law which he deduces from the facts stated. This case distin-guished from that of Oglesby's Sureties, 73 Texas, 658.

3. **Corporations.**—Under subdivision 27 of article 566 of title 20 of the civil code a charter filed in May, 1883, which declared that the corporation was organized for the purpose of "buying, selling, and dealing in real estate, live stock, bonds, securities, and other properties of all kinds, on its own account and for commission, in the United States and elsewhere," was not in violation of the Constitution and laws.

4. **Case Reviewed.**—Navigation Company v. County of Galveston, 45 Texas, 272, which holds that "the general clause (in subdivision 27, article 566, title 20, Revised Statutes) is controlled by the subject to which it relates, and refers to objects of the character of those named in the act," reviewed.

5. **Corporations.**—Though the general laws providing for the creation of private corporations contemplated that such a corporation should have its capital stock divided into shares, yet a failure to so divide its capital stock will not affect the validity of a charter granted for a lawful purpose. The existence of a corporation dates from the time of filing the charter in the office of the Secretary of State, and from that date the owners of its stock and the managers of its business are liable as stockholders only for debts contracted by it, and not as partners.

6. **Contract.**—When a corporation promises for a valuable consideration to pay the debt of another, the party owning the claim may sue direct upon the promise.

7. **Capital Stock of Corporation.**—The capital stock of a corporation, especially its unpaid subscriptions, is a trust fund for the general creditors of the corporation, which may be subjected by them to pay debts, either in the hands of a corporation which may purchase the franchise, or of others, with notice.

8. **Liability of Corporations.**—When a corporation transfers all its assets to an-other corporation and thus practically ceases to exist, leaving debts unpaid, the latter corporation takes the property subject to a lien in favor of the creditors of the old com-pany.

9. **Cases Cited.**—Burke v. Smith, 16 Wall., 309; Sanger v. Upton, 91 U. S., 60; Clapp v. Peterson, 104 Ill., 26; Hastings v. Drew, 76 N. Y., 9; Bartlett v. Dunn, 57 N. Y., 587; Gill v. Boles, 72 Mo., 424; Brum v. Ins. Co., 16 Fed. Rep., 140; Ins. Co. v. Transportation Co., 13 Fed. Rep., 516; and Blair v. Ry. Co., 24 Fed. Rep., 148, cited.

10. **Directors, Liability of.**—If the directors of a corporation which has pur-chased the franchises and property of another corporation misapply the assets of the latter, leaving its debts unpaid, they are individually liable to creditors to the extent of the assets received and misapplied.

11. **Parties.**—One who purchases from an insolvent corporation a note, relying on the representations made by the directors that their capital stock was paid up when in fact such statement was not true, can not in a suit to collect the money against the makers and endorsers of the note join the directors of the corporation as defendants and in the same action obtain judgment against them for damages resulting from the fraud and deceit.

APPEAL from Tarrant. Tried below before Hon. R. E. Beckham.

This suit was filed by appellant on the 17th day of August, 1884, against the Texas Investment Company, Limited, W. A. Garner, B. B. Paddock, George B. Loving, Fore, Morphy & Henderson (a firm composed of Walker Fore, W. J. Morphy, and R. M. Henderson), J. W. Dabbs & Co. (a firm composed of J. W. Dabbs, A. A. Henderson, R. M. Henderson,

and Samuel T. Tomlinson), and an attachment sued out against the Texas Investment Company, Limited, and levied upon a large amount of property shown in the return of the officer, and which plaintiff alleges was worth $50,000, which was claimed by the Fort Worth Publishing Company, and bond given for the trial of the right of property. It was also levied upon all the stock of the Fort Worth Publishing Company, which is alleged by plaintiff in one place to have been worth $100,000 and in another $50,000.

Afterwards, in January, 1885, plaintiff sued out other writs of attachment against the other defendants composing the firms of Fore, Morphy & Henderson and J. W. Dabbs & Co. to Tarrant, Delta, Hunt, and Hopkins counties, which writs were levied upon a great number of tracts of land, some of which levies were made subject to other levies, but several large tracts levied upon as a first levy.

The third amended original petition, by which appellee Britton and several others were first made parties and asked to be served, was filed August 22, 1885. It set forth the Texas Investment Company, the Texas Investment Company, Limited, the Fort Worth Publishing Company, and the Gazette Company all as pretended corporations. Plaintiff then alleges that several persons named signed a paper which was a pretended charter, and acknowledged it and filed it in the Secretary of State's office, pretending to form the Texas Investment Company, and afterwards signed an amended charter or pretended charter and called it Texas Investment Company. That prior to the 25th day of July, 1883, A. M. Britton became a member of this pretended corporation. That prior to said date they made Geo. B. Loving manager, with power to sign contracts. That on and prior to the 25th day of July, 1883, A. M. Britton, Geo. B. Loving, B. B. Paddock, J. W. Zook, Jerome Harris, W. A. Garner, and H. L. Bentley acted together under the name and style of Texas Investment Company in buying, selling, and speculating in property for mutual gain and profit. That they purchased from Fore, Morphy & Henderson cattle and executed the note sued upon; that said persons, Britton and others, acting together in said name, executed the note, which is copied in petition and is dated July 25, 1883, for $10,000, payable to the order of Fore, Morphy & Henderson, and due twelve months after date, and signed Texas Investment Company, by Geo. B. Loving, general manager; that in making the note said persons fraudulently pretended to act as a corporation, but averred that they were never legally incorporated and were never in fact a private corporation.

That said defendants, at the date of the execution and delivery of the note aforesaid, were acting and doing business together in the buying and selling of cattle and real estate and other property for their mutual gain and profit and not in the exercise of any corporate franchises or rights conferred upon them under and by virtue of the afore-

said pretended charters.  By reason of which the said defendants and each of them, naming them, composing the said association became liable and promised to pay said note, interest, and attorney fees.

The pleading then alleges an endorsement of the note before delivery by Geo. B. Loving, B. B. Paddock, and W. A. Garner, and that Fore, Morphy & Henderson, for a valuable consideration, endorsed and delivered it to J. W. Dabbs & Co., and the latter firm, for a valuable consideration, endorsed and delivered it to plaintiff, and alleges presentment and failure to pay and protest and notice to all the parties.

Plaintiff then sets out that if it is mistaken as to the law arising on the facts before stated, and if the court should be of opinion in fact and in law that the Texas Investment Company was a corporation, that by reason of making the note the said corporation became liable to pay the same.

The petition then goes on to allege that if said Texas Investment Company is and was a private corporation, duly incorporated, that on the 25th day of July, 1883, and a short time thereafter, it was the owner and in possession of a large number of cattle and other property of various kinds.

That if it was a corporation it was insolvent, and said property was a trust fund and was held by said Britton and others above named, who were charged with a trust to faithfully manage said property for the payment of the debts of the Texas Investment Company, among others the debt sued upon; but that disregarding their duty, etc., they sold, misapplied, and converted said property to their own use, and failed to discharge the trust, to plaintiff's damage $15,000.

That in April, 1883, A. M. Britton, Geo. B. Loving, B. B. Paddock, and others signed a charter for a pretended corporation, styled Loving Publishing Company, and it was filed in the office of the Secretary of State.  That its capital stock was divided into 1000 shares of $100 each, and the pretended corporation was to exist for a period of twenty-five years, and its objects and purposes expressed were a general publishing and printing business.  That its capital was never subscribed or paid. That the promoters and stockholders of the Texas Investment Company and Loving Publishing Company were for the most part the same.  That said publishing company did in fact possess and operate several newspapers, besides materials connected therewith, all of the value of $50,000, which had been seized by plaintiff in this case under writs of attachment as the property of the Texas Investment Company, Limited.   That none of the stock was subscribed or paid for, and though apparently a separate corporation the Loving Publishing Company was owned and controlled by said pretended Texas Investment Company as long as it existed and pretended to do business.   That the pretended officers, stockholders, and managers of both of the pretended companies were the same, and if in fact corporations were one and the same and not separate; that the Texas

Investment Company owned and controlled the business and property of the publishing company. That on the 17th of November, 1883, said Texas Investment Company, if a private corporation, was insolvent, being indebted $250,000 and not having more than one-third that amount of assets; that at that time the persons owning stock and otherwise connected with the said two companies formed a device for the purpose of forming another fraudulent corporation to be called Texas Investment Company, Limited, and that on that date Sidney Martin, Geo. B. Loving, W. J. Boaz, J. P. Smith, J. F. Evans, J. D. Reed, and W. J. Morphy signed an instrument pretending to be a charter for a corporation styled Texas Investment Company, Limited, and afterwards pretended to organize and elect officers. That in forming said corporation it was the intention to make it and the Loving Publishing Company appear to be two corporations, but in fact they were but one.

That the Texas Investment Company was the owner of a large amount of property, set out and enumerated with alleged values, amounting to $222,400, besides the property and effects which were claimed by the Loving Publishing Company, which had been estimated at $50,000. Among the property enumerated is 280 shares of stock of the New Mexico Land and Cattle Company, alleged to be worth $35,000. That on the 28th of November, 1883, said Texas Investment Company sold and transferred to the Texas Investment Company, Limited, all its property and assets, intending to include the newspapers and the property claimed by the publishing company, and in consideration of which the Texas Investment Company, Limited, agreed to pay all the debts of the Texas Investment Company, among them the note sued upon, and that all of said property became charged thereby with a trust for the payment of the debts of the Texas Investment Company, among them the debts sued upon; and the said Texas Investment Company, Limited, and its officers became trustees, and charged with the payment of the debts, but instead of applying the property to the payment of the debts had sold and squandered the greater portion thereof. That the 280 shares of stock of the New Mexico Land and Cattle Company mentioned remained the property of the Texas Investment Company, Limited, subject to and charged with the payment of its debts. That said company pretended to borrow a large sum of money from the Traders National Bank, and pretended to pledge said stock to it to secure the payment. That W. J. Boaz was president of said bank and H. C. Edrington cashier, and Boaz was director of Texas Investment Company, Limited, by reason of which the bank had notice of the trust. That Boaz and Edrington had made some disposition of the stock, and it was sought to recover said stock or its value from said bank and from Boaz and Edrington.

It is sought to hold the persons who were sued that were directors of the Texas Investment Company, Limited (J. P. Smith and J. D. Reed

were not sued), for misapplying the said property and failing to execute the trusts, and to hold Sidney Martin, J. H. Brown, W. J. Morphy, Geo. B. Loving, and A. M. Britton for, as pretended directors, mismanaging the property of Loving Publishing Company and issuing bonds to depreciate the value of its stock, which plaintiff alleges was owned by Texas Investment Company, Limited, and as against the Fort Worth Publishing Company it seeks to try the right or title to the newspaper property—engines, presses, type, etc., which had been seized by the attachment and had been claimed by said publishing company under affidavit and claim bond, and sought to hold the City National Bank and others liable for having disposed of said property.

The Traders National Bank and H. C. Edrington answered together:

1.   By a general demurrer.

2.   A special demurrer, in substance, because it was sought to recover of these defendants on the hypothesis that the Texas Investment Company was a corporation, and these defendants received and disposed of property upon which plaintiff had an equitable lien for its alleged debt because of the insolvency of said corporation; and there is no direct averment that the said Texas Investment Company is or ever was a corporation, but the same appears and is alleged in plaintiff's petition only hypothetically, by assumption, and by inference.

3.   That it is insufficient because plaintiff seeks to recover of said defendants on the hypothesis that the Texas Investment Company was a corporation and insolvent, and defendants received property upon which plaintiff had an equitable lien for an alleged debt against said supposed corporation, and there is no direct or specific allegation that said Texas Investment Company as a corporation is indebted to plaintiff, but the same is alleged hypothetically and by inference only.

4.   That the petition is contradictory, repugnant, and hypothetical in this:   It is specifically averred in said petition that the Texas Investment Company was not a corporation, but was merely a company or association of persons trading together for mutual profit and gain under said name, and that the note sued upon in this suit was executed by said persons in the name and capacity last aforesaid, while these defendants are sought to be bound on the hypothesis that the Texas Investment Company was a corporation and as such executed the note sued upon, and and there is no direct or specific allegation that said Texas Investment Company was a corporation and as such executed said note, but the same is averred hypothetically only.

5.   That the allegations concerning the Texas Investment Company, Limited, and the alleged transactions of these defendants therewith are vague, uncertain, contradictory, and repugnant.

6.   The general denial.

The Fort Worth Publishing Company answered by a general demurrer and several special exceptions, as follows:

1.   The plaintiff's third amended original petition was insufficient as to said defendant because vague, uncertain, contradictory, and inconsistent in this:   There is no averment that the defendant is or ever was a corporation, or showing it has any such legal existence as would entitle plaintiff to have or maintain any action against it.   That the allegations concerning its legal existence are vague, uncertain, and contradictory in this:   This defendant is set out and charged as being a pretended corporation.   It is again alleged that none of its stock was ever subscribed or paid for, and on the other hand it is alleged that its stock belonged to the Texas Investment Company and was worth $100,000, and that all the property claimed by it also was the property of the said Texas Investment Company and was worth $50,000, and at the same time alleges that said Texas Investment Company never had any legal existence, and further that said Texas Investment Company through its officers transferred said property of and stock in this defendant to the Texas Investment Company, Limited, alleged to be another pretended corporation.

2.   Because the only recovery sought that would affect this defendant is based upon the hypothesis that the Texas Investment Company was a corporation and owned the stock of this corporation, also the property that is and was claimed by this defendant, and there is no specific allegation that said Texas Investment Company is or ever was a corporation; that the same appears, if at all, in plaintiff's petition only hypothetically and by inference, while plaintiff avers by direct and specific averment that said Texas Investment Company was never incorporated.

3.   That it is multifarious in this:   Plaintiff seeks to recover of A. M. Britton, Geo. B. Loving, B. B. Paddock, J. W. Zook, Jerome Harris, W. A. Garner, and H. L. Bentley as partners or an association of persons trading and doing business under the name of the Texas Investment Company, because it is alleged that they in said capacity executed the note sued upon; and also seeks to recover of the Texas Investment Company as a corporation, and of the aforesaid persons as directors of said corporation because they sold and converted to their own use the property of said corporation; and at the same time seeks to recover of H. C. Edrington, W. J. Boaz, and the Traders National Bank the value of certain stocks; and also to recover of A. M. Britton, W. J. Morphy, W. J. Boaz, and others as directors for fraudulently misapplying the funds and property of the Texas Investment Company, Limited, and for neglecting the business of said company; and also to litigate with this defendant concerning the title to certain attached property for which it appears from said petition this defendant has claimed and filed claim bond; and also to recover from A. M. Britton and others for alleged fraudulent acts as directors of this defendant in issuing bonds; and also

to litigate with the City National Bank, the Gazette Company, and Geo. B. Loving concerning the title of said attached property which had been claimed by this defendant.

4. Because it appears from the petition that this defendant made oath to and filed claimant's bond for the property attached by plaintiff in this suit set forth in exhibit A (except certain office furniture), and that plaintiff can not in this suit contest defendant's right or title thereto, but must join issue in said statutory action for the trial of the right of property.

The defendants Martin, Huffman, Brown, and Boaz answered together by a general demurrer and several special exceptions that are in the nature of general demurrers to particular allegations, and also exceptions substantially the same as those made by the Traders National Bank and H. C. Edrington concerning the allegation that the Texas Investment Company was never incorporated, and seeking to bind them on the hypothesis that it was an insolvent corporation and they had squandered and mismanaged its assets. Other defendants urged like demurrers. The defendant Britton demurred upon substantially the same grounds as the other defendants, and also filed a plea of *non est factum* and of denial of partnership.

The court sustained the general and special demurrers of the City National Bank, Fort Worth Publishing Company, H. C. Edrington, W. J. Boaz, Sidney Martin, J. H. Brown, W. A. Huffman, and J. W. Zook, and the special exceptions 3-6 of A. M. Britton.

The plaintiff filed a trial amendment April 9, 1886, alleging "that on the —— day of November, 1883, the defendant the 'Texas Investment Company, Limited,' was legally incorporated under the laws of the State and that its officers and directors were as stated in the petition.

"That on the day therein mentioned the Texas Investment Company, an association composed of the persons and formed as alleged in the amended original petition, in consideration that said Texas Investment Company, Limited, would pay certain debts owing by said Texas Investment Company, among which is the debt sued on by plaintiff herein, transferred, set over, and conveyed unto said Texas Investment Company, Limited, all of its property and assets of every kind and description whatever as set forth in its said pleadings, and that said Texas Investment Company, Limited, accepted and received said property, and in consideration therefor assumed and promised to pay the debt sued on as well as others.

"That by reason thereof the Texas Investment Company, Limited, became liable to pay said debts, the property being charged with said debts in the hands of said company, which received and held said property in trust for the purpose of paying all of said debts; that the officers and directors of said company and all the other defendants well knew said facts; that on December 1, 1883, the said Texas Investment

Company, Limited, became insolvent and has continued so to be up to the present time, so that at no time from the date aforesaid to this day was it ever able to pay its debts, and that all its officers and directors, as well as all the other defendants in this suit, well knew," etc.

The court again sustained the exceptions to the petition. The plaintiff declined to amend and excepted to the ruling of the court.

The cause was then tried by a jury, resulting in a verdict and judgment for plaintiff for $13,255 as against the Texas Investment Company and the Texas Investment Company, Limited, W. A. Garner, B. B. Paddock, George B. Loving, Fore, Morphy & Henderson, and J. W. Dabbs & Co. The jury found a verdict in favor of A. M. Britton, J. W. Zook, and Jerome Harris, and the court entered judgment on the verdict, dismissing the case as to W. A. Huffman, Sidney Martin, J. H. Brown, W. J. Boaz, J. F. Evans, the Traders National Bank, H. C. Edrington, City National Bank, the Gazette Company, the Fort Worth Publishing Company, A. M. Britton, J. W. Zook, and Jerome Harris, with costs against plaintiff.

Motion by plaintiff for new trial was overruled. The plaintiff appealed. The opinion gives a sufficient statement of additional matters.

*Carter & Wynne,* for appellant. — 1. The petition was not subject to the general demurrer of the Texas Investment Company, Limited, and the court erred in so holding and compelling plaintiff to file a trial amendment. Wallis v. Beauchamp, 15 Texas, 303, 304; Montgomery v. Culton, 18 Texas, 736; Montgomery v. Jones, 18 Texas, 751; Montgomery v. Culton, 23 Texas, 156, 157; McCowan v. Schrimpf, 21 Texas, 22–29; Vanmeeter v. Vanmeeter, 3 Grat., 148.

2. The petition disclosed a good cause of action against the Traders National Bank and H. C. Edrington. Curran v. State of Arkansas, 15 How., 308; Mumma v. Potomac Co., 8 Pet., 286, 287; Wood v. Dunmer, 3 Mason, 308; Railway v. Howard, 11 Wall., 407; Haywood v. Lincoln Lumber Co., 26 N. W. Rep., 184; Mora. on Priv. Corp., sec. 559; Wait Fraud. Con.; secs. 117, 139; Thomp. on Stockholders, sec. 10; Thomp. Lia. of Offi., sec. 23, p. 397; Loring v. Brodie, 3 Am. and Eng. Corp. Cases, pp. 277–294; Heath v. Erie Ry., 8 Blatch., 411, citing 2 Story's Eq. Pl., sec. 213; Cunningham v. Pell, 5 Paige, 607; Hibernia Ins. Co. v. St. L. & N. O. Trans. Co., 13 Fed. Rep.; Hudson v. Plets, 11 Paige, 180; Perry on Trusts, secs. 843–53; Hiil on Trustees, pp. *518 top, 758–70; Pom. Eq., sec. 1058; Fields on Corp., sec. 403; Boon on Corp., secs. 41, 112; Insurance Co. v. Page, 66 Am. Dec., 175.

3. It was not essential for the bank first to reduce its claim to judgment, for where a claim must be satisfied out of a trust fund, as sought in this case, resort may be had to equity in the first instance. Russell v. Clark, 7 Cranch, 462.

4.    The petition was not multifarious.    Love v. Keowne, 58 Texas, 195.

5.    The petition charged a cause of action against W. J. Boaz, Sidney Martin, J. H. Brown, and W. A. Huffman.    Perry on Trusts, secs. 843–845; Hill on Trustees, pp. *518, 758–70; Hudson v. Plets, 11 Paige, 180; 2 Pom. Eq. Jur., sec. 1058; Trustees, etc., v. Bosseiux, 3 Fed Rep., 817–38; Heath v. Erie Ry., 8 Blatch., 347; Hodges v. N. E. Screw Co., 1 R. I., 312; S. C., 53 Am. Dec., pp. 624–637, and note; Duncan v. Jaudon, 15 Wall., 165.

6.    The court erred in sustaining the third, fourth, fifth, and sixth special exceptions of A. M. Britton.    First, because as to the third special exception the plaintiff's petition stated facts showing a breach of trust by said defendant (that is if the old Texas Investment Company was incorporated) to the injury of the plaintiff and others for whose benefit as well as the plaintiff's the suit was prosecuted.    Second, because as to the fourth special exception the petition showed Britton was one of the directors of the Texas Investment Company, Limited, and the averments showed the assets of the old company to have come to the limited company charged with a trust indicated in these assignments; that Britton with a knowledge thereof, acting with others, dissipated and converted the trust property, to the injury of the plaintiff and the others who had a right against said fund, for whose benefit the suit was prosecuted.    These reasons also apply as to the action of the court in sustaining the fifth and sixth special exceptions of A. M. Britton.    Authorities last cited, and Rev. Stats., arts. 565–69; Navigation Co. v. Galveston, 45 Texas, 272; Galveston Hotel Co. v. Bolton, 46 Texas, 644; Mora. on Corp., sec. 19, note 2; Heaston v. Ry. Co., 79 Am. Dec., 453; Kaiser v. Lawrence Savings Bank, 8 N. W. Rep., 772; Brum v. Mut. Ins. Co., 16 Fed. Rep., 143; Field v. Cook, 16 La. Ann., 154; Workingmen's Bank v. Converse, 29 La. Ann., 369; Cook on Stock and Stockholders, secs. 223–40.

7.    The court erred in refusing to give special instruction No. 2, asked by plaintiff.    Salmon v. Richardson, 30 Conn., 360; Zinn v. Mendel, 9 W. Va., 580; Schley v. Dixon, 24 Ga., 273; Arthur v. Griswold, 55 N. Y., 400; Hodge v. New England Screw Co., 53 Am. Dec., 637–51, note.

*Ball & McCart* and *Hogsett & Greene*, for appellees. — 1.    The petition was subject to the general demurrer of the Texas Investment Company, Limited, for the following reasons:   (1) It failed to allege that said company was duly incorporated, although it sought a judgment against it as a corporation.    (2) Its allegations are inconsistent and contradictory as respects said defendant.    Rev. Stats., 1190; Acts 1885, p. 103; Life Ins. Co. v. Davidge, 51 Texas, 249; Edgar v. Galveston, 46 Texas, 421.

2.    The plaintiff having obtained verdict and judgment against the

Texas Investment Company, Limited, as prayed for, the ruling of the court on its demurrer, if error, thereby became immaterial.

3.    The general and special demurrers of the defendants Traders National Bank and H. C. Edrington were properly sustained.   Hillebrant v. Booth, 7 Texas, 499; Edgar v. Galveston, 46 Texas, 421; Rule 2 for District Court.

4.    Said petition was multifarious and contained a misjoinder of parties and actions, and the demurrers were properly sustained.   Frost v. Frost, 45 Texas, 340; Morris v. Ashley, Dall., 619; Clegg v. Varnell, 18 Texas, 294; Oliver v. Robertson, 41 Texas, 422; Thomas v. Walsh, 44 Texas, 160.

5.    The petition was insufficient as to the City National Bank for the reasons set forth in the preceding propositions, and for the further reason that the said amended petition shows that the property for which it is sought to hold the City National Bank liable has been levied upon by attachment in this case and reclaimed by the Fort Worth Publishing Company under affidavit and bond for the trial of the right of property.

6.    It appearing from plaintiff's said amended petition that neither the makers nor indorsers of the note sued on are insolvent, and that plaintiff has seized and is seeking to condemn property by attachment more than sufficient to satisfy the debt sued on, there is no cause or necessity shown for pursuing the alleged trust fund.   Pom. Eq. Jur., secs. 220, 221, 424, note, and 1415.

7.    The amended petition was wholly insufficient as against the defendants Boaz, Martin, Brown, and Huffman for the reason stated in the preceding propositions, and for the further reason that an action does not lie against these defendants for mismanagement as directors of the corporation and misapplication of a trust fund on behalf of a general creditor of the corporation assignor, or if said action does lie on behalf of a general creditor it can not be joined with the debtor on the debt.

8.    The charge of the court complained of under said assignment was correct in declaring the articles of association to be a valid charter, and that defendants would not be liable individually as partners to persons dealing with said corporation under its corporate name.   Rev. Stats., art. 570–78, 595, 688; Mora. on Priv. Corp., 1 ed., secs. 29, 141; 2 ed., sec. 748, and notes; Taylor on Corp., secs. 145–8, 713–16; Powder Co. v. Sinsheimer, 46 Md., 315; Gartside Coal Co. v. Maxwell, 22 Fed. Rep., 197; Bank v. Almey, 117 Mass., 476, and authorities cited; Cochran v. Arnold, 58 Pa. St., 405, 406; Society Purim v. Cleveland, 43 Ohio St., 481; Bank of Toledo v. International Bank, 21 N. Y. 542; Cent. Ag. and Mech. Ass. v. Ins. Co., 70 Ala., 132, 133; Ramsey v. Ins. Co., 55 Ill., 314; Baker v. Neff, 73 Ind., 68; Bank v. Paddgett, 66 Ga.; Stout v. Zulick, 5 Cent. Law Rep., 333.

*Hunter & Stewart,* for Fore, Morphy & Henderson, filed an argument

urging the liability of the Texas Investment Company as partners, continuing:

"We invite a comparison of the purposes set forth in the articles of association of the Texas Investment Company with purposes expressed in the statute of Texas.   45 Texas, 272; 14 Cal., 424; 44 Barb., 625; 1 Lind. on Part., 164.

"If the articles of association are insufficient for the purpose of creating a corporation, then we may raise the question of the validity of the corporation in a collateral suit; for, being unauthorized, they are void, and may be questioned in any suit.   Navigation Co. v. Galveston County, 45 Texas, 272; 2 Texas, 531; 23 Texas, 468; 7 Wend., 540.

"If a corporation has no legal existence because it has no legal charter or organization, it is to be treated as a mere partnership.   Hill v. Beach, 12 N. J. Eq.; 73 Ill., 197; 1 Am. and Eng. Corp. Cases, 247; 29 Mich., 379; Kaiser v. Lawrence Savings Bank, 8 N. W. Rep. 772."

GAINES, ASSOCIATE JUSTICE.—This suit is founded upon a promissory note for $10,000 executed by "Texas Investment Company" through its general manager, and payable to the firm of Fore, Morphy & Henderson. The note was endorsed by W. A. Garner, B. B. Paddock, and George B. Loving, and delivered to the payees, and was subsequently endorsed by the latter and by R. M. Henderson, both in his own name and that of J. W. Dabbs & Co., and was delivered to plaintiff.

The petition shows that in executing the note the maker, the "Texas Investment Company," acted as a corporation, but it is averred that in fact the company was not legally incorporated; first, because its charter filed under the general law is not such as was authorized by the statute; and second, because the capital stock was never subscribed and paid for. The petition therefore sought a recovery against the members composing the company as being merely partners in the enterprise and individually liable for the debts of the concern.   A copy of the articles of incorporation are, however, annexed to the petition and made a part of it, and it is prayed in the alternative that in the event that it should be held that the company was legally incorporated that the plaintiff have judgment against it as such.

It is also averred in the petition that after the debt sued upon was created, a new corporation was attempted to be formed known as the "Texas Investment Company, Limited;" that the old company being insolvent transferred all its assets to the new, and that in consideration of such transfer the Texas Investment Company, Limited, assumed and promised to pay all the liabilities of the former company.   It is also averred that the assets of the old company were not applied to the payment of its debts, but were diverted by the managers and directors of the new company to other objects.   It is claimed in the petition that by reason of the

facts so averred the new company held the assets of the old in trust for the payment of the debts of the latter, and on that ground a recovery is sought not only against the new company on its assumpsit, but also against its directors for the misapplication of these assets, and against sundry individuals and corporations who are alleged to have received and appropriated portions of the assets, having knowledge of the trust.

This brief statement of the case suggests several difficult questions which lie at the foundation of the action against several of the defendants, but we will first consider certain exceptions interposed to the petition by defendants on the grounds of multifariousness and inconsistency of allegations. Is the petition multifarious? "Multifariousness in equity pleading is the improperly joining in one bill distinct and independent matters, and thereby confounding them; as for example the uniting in one bill of several matters perfectly distinct and unconnected against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill." Whart. Law Dic. The suit here in the main is for the recovery of one debt only, and a judgment is sought against several parties who have, as is alleged, made themselves successively liable for its payment. It is true as urged by counsel for appellees that numerous issues are presented, and that the labors of the court in disposing of the litigation are thereby greatly increased. We do not understand that this is an objection which can be successfully urged under our system of practice. From an early day our courts have encouraged the bringing of all parties interested in the subject matter of a litigation before the court, and determining their rights in one action. Clegg v. Varnell, 18 Texas, 294.

We are of opinion therefore that as to the maker and endorsers of the note the "Texas Investment Company, Limited," the directors of that company, and all parties who are alleged to have participated in the misapplication of the funds of the old company with a knowledge of the facts, the causes of action were properly joined in one suit. So far the suit is to collect a debt and to hold liable for its payment those who have converted property held in trust for its security. But on the other hand we think that so much of the petition as seeks a recovery against the directors of the old corporation on the ground that they falsely and fraudulently held out to the public that the capital stock of the corporation had been fully paid, and that thereby plaintiff was induced to discount the note sued on, presents a distinct cause of action. It is not a suit to collect the debt but to recover damages for having been wrongfully induced to purchase the obligation. This matter will be again referred to in another part of this opinion.

We are also of opinion that it is permissible for a plaintiff in our courts to state the facts upon which he relies for a recovery and to pray for alternative relief. In this case the plaintiff alleges the manner in which

the "Texas Investment Company" was organized, and claims as a matter of law that the attempted incorporation was not in compliance with the statute and that therefore it remained a mere partnership, and prays for judgment against its stockholders as individuals. But the petitioner prays that in the event it is mistaken in its legal conclusions, then that it have judgment against the company as a corporation. The pleader must state the issuable facts upon which he relies for a recovery. It being the duty of the court to draw the legal conclusion, he is not bound by his averment of the law deducible from the facts as pleaded by him.

This case is distinguishable from that of Oglesby's Sureties v. The State, 73 Texas, 658. That was an action upon two successive bonds of a tax collector with different sureties, and the petition alleged that there had been a default upon either the one or other bond, but did not allege an unconditional default upon either. It was there held that the pleading was bad, and that there being no privity between the sureties upon the two bonds the two causes of action should not have been joined. The petition did not aver the facts which showed the unconditional liability of the obligors on either bond. It did not allege that the default had occurred either during the first or the second term of office, but did aver that there had been a default and that if it did not occur during the one term it occurred during the other. The pleading failed to allege positively and directly the facts upon which a recovery was sought, and in that respect was essentially different from the case now before us.

This brings us to the question whether the Texas Investment Company was legally incorporated or not. The copies of its charter and amended charter, which are made a part of the petition, show that they were duly filed in the office of the Secretary of State. At the time the note sued on was executed the company was acting under the amended charter, which stated the purpose of its organization as follows: "This corporation is formed for the purpose of buying, selling, and dealing in real estate, live stock, bonds, securities, and other properties of all kinds, on its own account and for commission in the United States and elsewhere." This charter was filed in the office of the Secretary of State on the 18th day of May, 1883. At that time the original article 566 of the Revised Statutes, which defined the purposes for which corporations could be formed under title 20, was in force. That article, after enumerating twenty-six special purposes for which corporations could be organized, contained a twenty-seventh subdivision which read as follows: "For any other purpose intended for mutual profit or benefit, not otherwise specially provided for and not inconsistent with the Constitution and laws of this State." It seems to us that this provision is sufficiently comprehensive to embrace the purpose designated in the charter of the company. It was evidently intended that the business of this corporation was to be carried on for the mutual profit and benefit of its shareholders, and we know of no pro-

vision of the Constitution which prohibits the formation of a corporation for the purpose named.    It is not inconsistent with any law of the State then existing unless it be some provision of the same article of the Revised Statutes.

We find no inconsistency between the purpose expressed in the charter and the special purposes provided for in the previous subdivisions of that article.    It can not be claimed that all the purposes for which a corporation can be formed were designated in the first twenty-six subdivisions. We must presume that the language of the twenty-seventh subdivision was intended to mean something, and we think it should be construed to mean what it says, and to authorize a corporation for carrying on any business intended for profit which was not expressly or impliedly prohibited by the Constitution or some other law.    The evident intent was to attract capital and to encourage its combination for the pursuit of any lawful business.

Counsel for appellant cite the case Navigation Company v. Galveston County, 45 Texas, 272, in opposition to the view we have expressed.    We confess that to our minds the principle upon which that case was decided does not very clearly appear in the opinion.    We understand, however, that it is held that since "canals for the purpose of irrigation and manufacturing purposes" were mentioned in the next preceding section of the article it indicated an intention that a corporation should not be formed for the construction and operation of a canal for the purposes of navigation.    If, as some expressions in the opinion would seem to indicate, it was intended to hold that corporations could not be organized except for the special objects mentioned, and hence that section 27 meant nothing, we should feel constrained to withhold our assent to the doctrine.

But it is also insisted that the company was never legally incorporated because the capital stock was not subscribed and paid for by the promoters of the enterprise.    That the Legislature contemplated that corporations organized under the statute under consideration should be conducted as stock companies, having their capital stock divided into shares, we think there can be no doubt.    The law requires that the articles of incorporation shall show "the amount of capital stock, if any, and the number of shares into which is divided."    Rev. Stats., art. 567; see also arts. 590, *et seq.*    Article 591 provides that the stock subscribed for shall be paid in such manner and in such installments as the board of directors may order.    But we find no provision in the law making the existence of the corporation dependent upon the subscription to its stock or the payment therefor.    On the contrary it is expressly provided that "the existence of the corporation shall date from the filing of the charter in the office of the Secretary of State."    Rev. Stats., art. 570.

It follows, we think, that when the company filed its articles of incorporation with the Secretary of State, it became a corporation in law, and that

the owners of its stock and the managers of its business can not be held liable as partners for debts contracted by it. This ruling is supported by authority. Laflin & Rand Powder Co. v. Sinsheimer, 46 Md., 315; Society Purim v. Cleaveland, 43 Ohio St., 481; First Nat. Bank v. Almy, 117 Mass., 476. It may be doubted whether the plaintiff is in a position to question the existence of the corporation if in fact it did not legally exist. Its allegations show that in discounting the note sued on it relied upon the representation that it was a corporation with a paid up capital of $100,000. But that question we need not determine.

We come next to the question of the effect of the alleged transfer of the property of the "Texas Investment Company" to the new corporation known as the "Texas Investment Company, Limited." It is alleged that the former company, being insolvent, transferred to the latter all its property, the latter agreeing in consideration of the transfer to pay the former's debts. That by such an agreement the "Texas Investment Company, Limited," became bound to pay the debt of plaintiff there can be no doubt. According to the rule in the American courts when one person for a valuable consideration agrees to pay a sum due from the second to the third, the third party can sue directly upon the promise. 2 Whart. on Con., sec. 785, *et seq.*

But did the latter corporation take the property of the former charged with a trust in favor of the former's creditors? In support of the affirmative of the proposition we are cited to the case of Wallace v. Beauchamp, 15 Texas, 304. There a father conveyed to his son certain property upon consideration of the latter's promise to support his father and mother and pay his father's just debts. It was held a trust existed upon the property conveyed in favor of the father's creditors. While this may be good law as applied to the facts of that case, we do not think it can be affirmed as a general principle that when a party purchases personal property of another, and in consideration of the sale agrees to pay the seller's debt, a trust exists upon the property in favor of the creditor in the absence of an agreement to that effect. The doctrine is, however, reasserted in the case of Montgomery v. Culton, 18 Texas, 736. That was a case in which the holder of an allowed and approved claim against an estate brought suit against the heir who had received the property at the hands of the executor and had promised to hold him harmless against the debts of the estate. This statement is sufficient to show that the question was not necessarily involved in that case.

But this is a case of a transfer by an insolvent corporation of all its property to another, which assumed to pay its debts. In Sawyer v. Hoag, 17 Wallace, 620, Mr. Justice Miller says: "Though it is a doctrine of modern date we think it now well established that the capital stock of a corporation, especially its unpaid subscriptions, is a trust fund for the general creditors of the corporation; and when we consider the rapid de-

velopment of corporations as instrumentalities of the commercial and business world in the last few years, with the corresponding necessity of adapting legal principles to the new and varying exigencies of this business, it is no solid objection to such a principle that it is modern, for the occasion for it could not sooner have arisen. The principle is fully asserted in two recent cases in this court, namely, Burke v. Smith, 16 Wallace, 390, and in New Albany v. Burke, 11 Wallace, 96."

In Sanger v. Upton, 91 United States, 60, Mr. Justice Swayne uses this language: "The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which exists in private copartnerships. When debts are incurred a contract arises with the creditors that it shall not be withdrawn or applied otherwise than upon their demands until such demands are satisfied. The creditors have a lien upon it in equity. If diverted they may follow it as far as it can be traced and subject it to the payment of their claims, except as against holders who have taken it bona fide for a valuable consideration. It is publicly pledged to those who deal with the corporation for their security. Unpaid stock is as much a part of this pledge and as much a part of the assets of the company as cash which has been paid into it." To the same effect are the following cases: Clapp v. Peterson, 104 Ill., 26; Hastings v. Drew, 76 N. Y., 9; Bartlett v. Dunn, 57 N. Y., 587; Gill v. Bales, 72 Mo., 424.

In the cases from which we have quoted and in many of those cited the effort was to recover of stockholders unpaid subscriptions upon stock or to recover property which had been withdrawn by stockholders in exchange for stock already paid. It can not be claimed that the creditors have any lien upon the property of a solvent corporation which it disposes of in the usual course of its business. But when one corporation transfers all its assets to another corporation and thus practically ceases to exist, without having paid its debts, the latter corporation takes the property subject to a lien in favor of the creditors of the old company. This doctrine is distinctly asserted in 1 Jones on Liens, sec. 85, *et seq.,* and is supported by the following cases: Brum v. Ins. Co., 16 Fed. Rep., 140; Hibernia Ins. Co. v. Transportation Co., 13 Fed. Rep., 516; Harrison v. Ry. Co., 13 Fed. Rep., 522; Henson v. Britton, 88 Mo., 549; Blair v. Ry. Co., 24 Fed Rep., 148; Fogg v. Ry. Co., 17 Fed. Rep., 871.

The principle seems to have been recognized in part at least in the old English case of Carson v. African Company, 1 Vernon, 121, which is similar to the case under consideration. There a corporation known as the Old African Company became insolvent, being indebted to plaintiff. A new African Company was formed for the purpose of carrying on the same business pursued by the old. The old corporation without being formally dissolved transferred its assets to the new, the latter agreeing to apply the purchase money to the debts of the former. The suit was by a cred-

itor against the new company only, and a question was raised whether or not the old company should not have been made a party. An agreed decree was rendered in favor of the plaintiff, and it seems not to have been questioned but that for want of proper parties the suit was properly brought. When it is remembered that by the rule of decision in the English courts, a third party for whose benefit a contract has been made by two others and to which he has not agreed, can not sue alone for it either at law or equity, it will be seen that the case recognizes the existence of a trust. See Pollock's Principles of Contracts, p. 200, *et seq.;* also Empress Engineering Co., 16 Ch. Div., 125.

We next proceed to apply the principles announced to the assignments of error in the order in which they are presented in appellant's brief. We will dispose of the questions separately as presented in the propositions under the assignments.

First it is insisted that the court erred in sustaining the demurrer of the "Texas Investment Company, Limited." It appears, however, that after the demurrer was sustained to the plaintiff's petition it filed a trial amendment, alleging that that company was duly incorporated, and it also appears that upon this amendment a final judgment was given against it. Consequently the ruling of the court in this particular could not have operated to the prejudice of appellant.

It is next complained that the court erred in sustaining the demurrers of the Traders National Bank and of H. C. Edrington. In so far we think the assignment is well taken. The petition averred that the "Texas Investment Company," being insolvent, transferred its assets to the "Texas Investment Company, Limited;" that in consideration thereof the latter agreed to pay the debts of the former; that among the assets so transferred were 228 shares of the capital stock of the New Mexico Land and Cattle Company, and that the Traders National Bank and Edrington, with a full knowledge of the facts, had possessed themselves of said property, and that it had been pledged to the bank for borrowed money; that by reason of the premises the bank had made itself a trustee of the stock for the benefit of the creditors of the "Texas Investment Company," and that with the assistance of Edrington it had made some kind of transfer of the stock without applying the proceeds to the purposes of the trust. It follows from what we have heretofore said that if these facts be true that Edrington and the bank have made themselves liable to account to the creditors of the Texas Investment Company for the value of the shares so appropriated.

As to the City National Bank we think the demurrer was properly sustained. It is alleged that the Texas Investment Company became the owner of the property of the Fort Worth Publishing Company, and that this was transferred to the Texas Investment Company, Limited; that the latter company caused shares of stock to be issued to certain persons,

to enable them to become directors of the publishing company, and had them elected as such directors; that the directors so elected issued bonds of the last named company, which were secured by a mortgage and were pledged to the City National Bank, and that the bank caused the mortgaged property to be sold in satisfaction of the indebtedness for which they were so pledged. We do not think that these allegations show any liability of the bank to this plaintiff or to other creditors of the Texas Investment Company.

We are of the opinion that if, as alleged, the directors of the Texas Investment Company, Limited, misapplied the assets conveyed to it by the old company, they rendered themselves individually liable to the creditors of the latter to the extent of the assets so misapplied. It follows that the demurrer should not have been sustained as to Boaz, Martin, Brown, and Huffman.

We also think that the court erred in sustaining the defendant Britton's third, fourth, and sixth exceptions to the petition. The fifth we think was properly sustained.

We have already determined that the Texas Investment Company was legally incorporated by its amended charter filed May 18, 1883, in the office of the Secretary of State. It follows that the court did not err in charging that the members of that company were not personally liable for its debts.

Nor did the court err in refusing to charge the jury that the charter of the Texas Investment Company, Limited, was insufficient to create a private corporation under the laws of Texas. The plaintiff, after a demurrer was sustained to its third amended original petition, filed a trial amendment in which it was distinctly alleged that that company was legally incorporated. Under this pleading it would have been clearly erroneous to have given the charge. By the trial amendment the plaintiff abandoned all its previous allegations by which it sought to charge as partners the persons composing the company. If it desired to revise the court's ruling upon the sufficiency of the allegations to hold them individually liable for the company's debt, the plaintiff should have stood upon its pleadings and excepted to the ruling of the court. Its trial amendment was in effect the voluntary abandonment of all previous pleadings inconsistent therewith.

The last assignment presented in appellant's brief is that the court erred in refusing to give the following instruction:

"You are instructed that persons can not enter into or form a corporation and go forward and do business unless they have in good faith subscribed the amount of the capital provided for by their charter. In this case the capital provided for by the charter of the Texas Investment Company was one hundred thousand dollars, and before said parties who

composed said firm could lawfully do business the said capital should have been subscribed in good faith, and if you believe that said capital was not so subscribed, then you are instructed that the persons who composed said company had no authority to pretend to act as a corporation; and if you believe from the evidence that said George B. Loving, A. M. Britton, B. B. Paddock, J. W. Zook, Jerome Harris, and W. A. Garner, or either of them, on the 25th day of July, 1883, at the time of the execution of the note sued upon, so held themselves out as being stockholders in and possessed of franchises for the corporation known as the Texas Investment Company, with a paid up capital stock of $100,000, and so pretended to act as a corporation, executed the note sued upon, and that said capital stock had never in fact been subscribed and no part thereof, and that said pretension upon the part of the said defendants was fraudulent and intended to deceive the public, and if you further believe that it did deceive the said Fore, Morphy & Henderson and the said plaintiff in this case, and induced the said Fore, Morphy & Henderson and the said plaintiff to accept the said note, then you will find a verdict for plaintiff for the full amount of said note, interest, and attorney fees as against the said persons so connected with said company, and who so pretended to act for said company, and participated in the purchase of said cattle, pretending that said company was a corporation with a paid up capital of $100,000."

We have already expressed the opinion that neither the subscription nor the payment of the capital stock of an association is essential to call into existence a corporation under our general laws. If the capital stock of the corporation was not paid, and if the directors held out to the world that it was operating upon a full paid capital stock of $100,000, and if plaintiff relied upon such representation when it purchased the note of the corporation, then it may be that the directors rendered themselves liable to respond in damages for any loss that was thereby occasioned. But if so they were liable in action of deceit sounding purely in damages—that is to say, not in an action for a breach of a contract, but in an action for fraudulent representations by which the plaintiff was induced to make the contract. This was a distinct cause of action, and should not we think have been joined in a suit to recover of the makers and endorsers of the note and of others who had rendered themselves liable for its payment by misappropriating property upon which the holder of the obligation had a lien for its payment. In so far as a recovery was sought for the alleged fraud of the directors of the old corporation in representing that its capital had been previously paid, we think as has been previously intimated that the petition was subject to exception for multifariousness. It follows that appellant was not prejudiced by the refusal of the court to give the instruction requested.

For the errors pointed out the judgment is reversed and the cause re-manded.

*Reversed and remanded.*

Delivered June 21, 1889.

Associate Justice Henry not sitting.