R. M. WAGGONER v. HERRING-SHOWERS LUMBER CO.

No. 4747.  Decided June 10, 1931.
(40 S. W., 2d Series, 1.)

*Weeks, Morrow, Francis & Hankerson,* for appellant.

A party to an executory contract for the purchase of real property has a right to repudiate prior to its execution, and such contract cannot be enforced against him by one for whose benefit it was made where such party pleads the statute of frauds. G. W. Morris v. J. C. Gaines, 82 Texas, 255; Brock v. Jones, 8 Texas, 78; Browne on Frauds, sec. 115; Crutchfield v. Donathon, 49 Texas, 69.

We wish to point out to the court that this case is not similar to the facts decided by this court in Oil Well Supply Co. v. Burk-Waggoner Oil Company, 261 S. W., 830; Pomeroy, Specific Performance of Contracts, para. 103 (Third Edition, Banks & Company, 1926); Devlin on Real Estate, Third Edition, vol. 1, p. 211; Williston on Contracts, vol. 1, p. 737, para. 394.

R. M. Waggoner is not liable to the Herring-Showers Lumber Company for payment of the note sued upon, for the reason that his liability is predicated upon proof of an oral agreement involving the purchase of real estate, testimony in support of which agreement is inadmissible because of the inhibition of the parol evidence rule which renders inadmissible all testimony tending to vary by parol the terms of a written instrument which by the common law was required to be under seal; and in this case a deed specified that Clois L. Greene should assume the Burk-Waggoner Oil Company's debts, and such written agreement set forth as a contractual consideration in said deed cannot be changed by proof of a prior oral agreement to the effect that R. M. Waggoner and Clois L. Greene agreed to assume said debts, for the law merges such previous agreements in the subsequently executd deed.

*Fischer & Fischer* and *Berry, Stokes & Killough,* for appellee.

The appellant under his first point relies for reversal of the judgment rendered in this cause upon the answers of the jury to certain issues submitted in which it found that the defendant Waggoner, after having first agreed with the directors of the Burk-Waggoner Oil Company that he would assume and pay the company's debts in consideration of the property, told S. A. L. Morgan, one of the directors, that he would not take over the property of the corporation and assume and pay its debts, as he had agreed to do at the directors' meeting. The defendant lays down as a premise from which he argues that by the answer of the jury to such issue, Waggoner is released; that the agreement that Waggoner made was a parole executory contract for the purchase of real estate. We think thats the defendant's counsel is basing his argument upon a false premise. The contract that Waggoner made with the directors of the oil company was not a contract to purchase its real estate, but a promise to it that he with Greene would pay its debts if the directors of the corporation would transfer to them the corporation's property. It therefore

follows that this agreement is not within the statute of frauds, either as to agreeing to pay the debt of another, or as to the statute with reference to the purchase and sale of real estate. It is immaterial what was the consideration for the promise, so long as it was valuable. Therefore, the only question that arises is: Waggoner having once made the promise to pay the debts of the corporation in consideration of the mutual agreement between him and Greene on the one hand and the directors of the corporation on the other, can he thereafter escape his liability under the promise without the consent of the creditors of the corporation, for whom the promise was made?

It has long been the law of this state that where one person makes a promise to another for the benefit of a third person, the third person may maintain an action upon such promise. Nor is it necessary that the name of the person for whose benefit the promise is made should in terms be used. McCowan v. Schrimpf, 21 Texas, 22.

From the holding of Justice Wheeler in this case, it follows that in this jurisdiction the rights of the beneficiary of a contract arise as soon as the contract is made, or in other words, it is not necessary that the beneficiary assent to the agreement between the promisee and the promisor before his rights arise against the promisor, for it is said that: "it is not necessary that the name of the person for whose benefit the promise is made should in terms be used." From this language it was evidently intended by the court that in order to give rise to the beneficiary's rights against the promisor that he need not have first assented thereto. If then the beneficiary's rights arise against the promisor as soon as the promise and agreement is made, can the promisor and the promisee destroy or prejudice such beneficiary's rights against the promisor by a subsequent agreement to which the beneficiary is not a party? Williston on Contracts, art. 396; Tweeddale v. Tweeddale, 61 L. R. A., 509, 96 Am. St. Rep., 1003, 93 N. W., 440.

If we are correct in our assumption that when Waggoner and Greene promised and agreed with the directors of the Burk-Waggoner Oil Company that they would assume and pay the corporation's debts in consideration of its property being transferred to them, then the rights of the creditors of such corporation arose immediately, and they immediately had a right of action against Waggoner and Greene and had a right to look to them for the payment of their debts and anything that Waggoner did or said subsequently thereto without the assent of such creditors could not in any way prejudice the rights of such creditors against him. Certainly the manner in which he attempted to repudiate his agreement could have no effect upon their rights, for one can not repudiate or rescind a contract that he makes with a corporation through its governing body by thereafter simply stating to one or two of the individual members of the board of directors of such corporation that he is not going to carry out

the agreement that he made with it. Southern Kansas Ry. Co. of Texas v. Lougne, 139 S. W., 11, C. J., 14A, page 356.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

We refer to the opinion of the Court of Civil Appeals for a complete statement of this case. 288 S. W., 260.

Suit was brought by the Herring-Showers Lumber Co. against the Burk-Waggoner Oil Co., a corporation, and R. M. Waggoner and Clois L. Greene, on a debt of the corporation. It was instituted against the two individual defendants by reason of transactions hereinafter described. R. M. Waggoner was the president of the corporation, and Clois L. Greene its general manager. Both were members of the board of directors, and with S. A. L. Morgan, vice president, V. D. Tennyson, secretary-treasurer, and W. R. Ferguson constituted the board. On September 27, 1920, the corporation was hopelessly insolvent and had quit, or was about to quit, its corporate business. On that date it owed approximately $300,000, and had about $100,000 in assets, consisting of personal and real property. On the date named there was a regularly called meeting of the board of directors of the company, held at its office in Wichita Falls, at which were present all the directors above named. At this meeting certain transactions took place, a memorandum of which was incorporated in the minutes. Recitations from the minutes are as follows:

"The meeting was called to order by the President, R. M. Waggoner, who then proceeded to make a statement to the board of directors of the condition of the company's affairs, showing that the indebtedness of the company was approximately $300,000.00 and that the assets of the company amounted to less than $100,000.00, and that the company was without funds to proceed any further. He also stated that practically two-thirds of this indebtedness due by the company was due to R. M. Waggoner and Clois L. Greene, who had advanced various sums of money from time to time to the company.

"Clois L. Greene thereupon stated to the board of directors that it was his wish to keep the company from going into the hands of a receiver and that if it met with the approval of Mr. Waggoner he and R. M. Waggoner would take over the assets of the company, including all of its machinery, wildcat leases, and other property, and work out of these assets as much as they could and that they would assume the indebtedness to the end that the creditors of the company be paid in full, and the said R. M. Waggoner thereupon stated that the suggestion met with his approval.

"Thereupon director S. A. L. Morgan made a motion that the Board of Directors accept the proposition of Messrs. Greene and Waggoner to take over the property and assets of the company and assume all obligations of the company for the outstanding indebtedness, which motion was seconded by director W. R. Ferguson, and the motion was then put to

the board of directors by S. A. L. Morgan, vice president, and all the directors voted in the affirmative.

"Director W. R. Ferguson thereupon made a motion which was seconded by director Clois L. Greene, that S. A. L. Morgan, as vice president, and V. D. Tennyson, as secretary, prepare and execute all papers on behalf of the company necessary and proper to carry out the agreement between the company and the said R. M. Waggoner, and Clois L. Greene, which motion was carried by the unanimous vote of the board of directors.

"Director S. A. L. Morgan made a motion, which was seconded by director W. R. Ferguson, that the secretary be instructed to prepare a financial statement setting forth the company's financial condition and the disposition of its assets and indebtedness, and that a copy of the same be sent to all stockholders, which motion was carried by unanimous vote.

"No other business coming before the Board, the meeting was declared adjourned."

After this meeting of the board of directors the Burk-Waggoner Oil Company ceased to be a going concern, and transacted no further business.

In accordance with the minutes, Mr. Morgan, as vice president of the company, and Mr. Tennyson, as secretary, prepared and executed a conveyance of all the property, personal and real, of the corporation; but instead of conveying it to Waggoner and Greene, conveyed it to Greene alone. This instrument reads as follows:

"THE STATE OF TEXAS )
COUNTY OF WICHITA. )

"KNOW ALL MEN BY THESE PRESENTS:

"THAT BURK-WAGGONER OIL COMPANY, a corporation, for and in consideration of the sum of ten dollars and other valuable consideration paid by CLOIS L. GREENE, and the further consideration that the said Clois L. Greene has assumed and by these presents does assume all the outstanding debts, liabilities, and obligations of said corporation wherever located and whatever kind and character, has granted, bargained, sold, conveyed, assigned, and delivered, and by these presents does grant, bargain, sell, convey, assign, and deliver unto the said Clois L. Greene all of the property and assets of Burk-Waggoner Oil Company of whatever kind and character and wherever located, including all oil and gas leases and leasehold estates in Wichita, Wilbarger, and Wise Counties, Texas, together with all machinery, lease houses, and other equipment of whatever kind and character located thereon, including the following, to-wit:

"1 Packard truck, complete with trailer;
1 Rotary rig, complete with drill pipe and boiler;
1 Rotary rig, dismantled;

3 Standard rigs, complete, with all extra and fishing tools, boilers,. and other equipment;

3 Strings big hole pipe, each string approximately 3000 feet in length;.

1 Jones roadster automobile;

1 Buick 5 passenger automobile;

"Together with any debts and obligations that may be due the company from other parties, it being the intention by this instrument to transfer and assign to the said Clois L. Greene all the assets of said Burk-Waggoner Oil Company of every kind and character whether real or personal or mixed in consideration of his paying off and discharging the debts and obligations of the company.

"TO HAVE AND TO HOLD unto the said Clois L. Greene, his. heirs and assigns, forever.

"WITNESS BURK-WAGGONER OIL COMPANY, this 6 day. of October, A. D. 1920.

"(Signed)   BURK-WAGGONER OIL COMPANY,.

"By S. A. L. Morgan,

"Vice President.

"ATTEST:

V. D. TENNYSON,
    Secretary."

Waggoner denied making the oral agreement, in so far as he was concerned, evidenced by the minutes. Morgan and Ferguson testified positively to the agreement shown in the minutes.

The case was submitted to a jury, and the jury found. in response to special issues, that Waggoner did agree at the directors' meeting that he would take over the corporation assets along with Greene and pay the corporation's debts; but that before the execution of the instrument conveying the property of the corporation to Greene, Waggoner told the latter, and also Morgan and Tennyson, the vice president and secretary. respectively of the corporation, that he would not take over the corporation assets and agree to pay its debts. In other words, the jury found that Waggoner informed the officers and directors named, after the officers and directors named, after the adjournment of the directors' meeting, but prior to the date of the transfer of the property to Greene, that he, Waggoner, would not go into the deal with Greene and would not take over the assets and agree to pay the debts of the Burk-Waggoner Oil Company. Morgan denied that Waggoner made any such statement to him, but did say that the latter requested him to have the conveyance made to Clois L. Greene, instead of to both Greene and Waggoner, and. that for this reason alone the conveyance was made to Greene instead of to Greene and Waggoner.

Upon the verdict of the jury the trial court entered a judgment in. favor of the Herring-Showers Lumber Company and against the Oil

Company and Waggoner. The suit was dismissed as to Greene, who had previously been adjudged a bankrupt. The Court of Civil Appeals affirmed the judgment of the trial court.

Against the oral contract of assumption evidenced by the record, Waggoner urged the statute of frauds. The Court of Civil Appeals overruled the contention, saying:

"The contract of Waggoner and Greene with the Board of Directors, that they would pay the debts of the Oil Company in consideration of the transfer to them of all the company's property, real and personal, was not within the terms of the statute of frauds, and is therefore not governed by the provisions of that act requiring such contract to be in writing. By their assumption it made the debt their own and they became the principal obligors to the creditors of the company."

But for the fact that the contract of assumption on the part of Waggoner and Greene embraced real estate, we would be in accord with this holding.

The agreement of one party with another to pay the debts of the latter to a third party, upon a valuable consideration, is not within, and therefore not prohibited by the statute of frauds. Bank of Garvin v. Freeman, 107 Texas, 523, 181 S. W., 187; Spann v. Cochran, 63 Texas, 243; Turnbow Lumber Co. v. Eastham (Texas Civ. App.), 221 S. W., 667; Mullin v. Nash, etc. Motor Co. (Texas Civ. App.), 250 S. W., 472; Atkinson v. Jackson Bros. (Texas Civ. App.), 259 S. W., 280.

However, the contract involved in the instant case is not a simple contract of assumption upon a valuable consideration. The consideration moving from the corporation to Waggoner and Greene was not only the transfer of the personal property of the corporation, but the conveyance of its real property as well. The contract, therefore, as a whole, was one necessarily within the statute of frauds, not binding on Waggoner and Greene until the execution of some instrument by them evidencing the agreement, or the execution of a transfer or some other instrument showing the sale of the real property by the corporation, duly accepted by them. R. S., art. 3995; Sprague v. Haines, 68 Texas, 215, 4 S. W., 371; Gatewood v. Graves (Texas Civ. App.), 241 S. W., 264; Priddy v. Greene (Texas Civ. App.), 220 S. W., 243; Pantaze v. McDill (Texas Civ. App.), 228 S. W., 962; Allen v. Allen, 101 Texas, 362, 107 S. W., 528; Anderson v. Tinsley (Texas Civ. App.), 28 S. W., 121; Haskell v. Merrill (Texas Civ. App.), 242 S. W., 331; Hooks v. Bridgewater, 111 Texas, 122, 229 S. W., 1114. There was a transfer executed of course, but this instrument, as we have seen, conveyed the property to Green only, and on its face evidenced an assumption by Greene alone of the debts of the corporation in consideration therefor. The jury found that before the execution of this instrument three of the officers and directors of the corporation were notified by Waggoner that he would not go

forward with the oral contract to accept a transfer of the properties of the corporation and pay its debts. This notice by Waggoner we think in law sufficient notice to the corporation of Waggoner's repudiation of the oral contract which the jury found he had made. 10 Texas Jurisprudence, p. 1015, secs. 346, 350; Fletcher's Cyclopedia of Corporations, vol. 4, secs. 2216, 2231, 2232. At any rate, when the designated officers of the corporation did finally execute the transfer of the property, they executed it to Greene only in accordance with Waggoner's request. It is true that the defendant in error contends that the property in effect passed to Greene in trust, for both Waggoner and Greene, and that, therefore, Waggoner was bound. The finding of the jury, however, is inconsistent with this contention, and we are not able to sustain it in view of the verdict.

The Court of Civil Appeals concluded that the notice by Waggoner to the corporation's officers that he would not be bound by the oral argument was insufficient to prevent the rights of the defendant in error, as a creditor, from accruing, and, therefore, regardless of the status of the contract as between the corporation and Waggoner and Greene, it was binding on Waggoner as to the creditors of the company. In this we think the Court of Civil Appeals erred. It is quite true that the formal acceptance of a creditor may not be necessary to bind a subsequent purchaser of the property where he has by an enforcible contract assumed the debt, and that the institution of a suit might be a sufficient acceptance. This, however, is not the case before us. Here there was never an enforcible contract between Waggoner and the corporation. On the contrary, the agreement was one for the conveyance of real estate in violation of the statute of frauds. Since at the time Waggoner notified the officers of the company that he would not execute the contract, there had been no acceptance by the creditors, then regardless of the validity or binding effect of the contract Waggoner was free to do what the jury found he did do,—that is, decline to go forward with the trade. We think the rule is estalished in this state that, even as between a vendor and a vendee, a contract of purchase and sale of real estate, although executed as required by law, involving an assumption of liability, may be rescinded without any continuing liability in favor of the creditor, so long as the creditor has not accepted. Edwards v. Beals (Texas Com. App.), 271 S. W., 887; Caraway v. Fowler (Texas Com. App.), 267 S. W., 672; Morrison v. Barry, 10 Texas Civ. App., 22, 30 S. W., 376 (writ ref.); Huffman v. Western Mortgage & Inv. Co., 13 Texas Civ. App., 169, 36 S. W., 306.

The parol agreement to convey the real property here involved to Waggoner and Greene was, as we have said, plainly in violation of the statute of frauds. When Waggoner notified the officers of the corporation, as found by the jury, that he would not consummate the trade, the

parol contract was rescinded and at an end, as between the corporation and Waggoner. Simpson v. Greene (Texas Civ. App.), 212 S. W., 263, 266. Obviously the corporation could not have been compelled to execute the conveyance, because the oral contract was for the sale of real estate; and any defense, we think, which the corporation could have urged could likewise be asserted by Waggoner against it and its creditors.

The beneficiaries for whose advantage the contract was made could not acquire a better standing to enforce such contract than that occupied by the contracting parties themselves. Dunning v. Leavitt, 85 N. Y., 30, 39 Am. Rep., 617; Crowe v. Lewin, 95 N. Y., 423; Malanaphy v. Mfg. Co., 125 Iowa, 719, 101 N. W., 640, 106 A. S. R., 332; Ellis v. Harrison, 104 Mo., 278, 16 S. W., 198; Wheat v. Rice, 97 N. W., 296; Amonett v. Montage, 75 Mo., 43; Davis v. Calloway, 30 Ind., 112, 95 Am. Dec., 671; Mitchell v. Cooley, 5 Rob. (La.) 243; Stines v. Dorman, 25 Ohio St., 580.

What we have said requires a reversal of the judgments below, but we are of the opinion that we ought not to render the case. The statute provides that the Supreme Court shall reverse and remand, rather than reverse and render, a cause, when the justice of the case demands another trial. R. S., art. 1771. Under this we have held that we will remand rather than render final judgment where justice will probably be better subserved. Faulkner v. Reed (Texas Com. App.), 241 S. W., 1002. This rule is followed even in cases where the Supreme Court has power under the facts to reverse and dismiss the case. Faulkner v. Reed, supra; Green v. Rugely, 23 Texas, 539; Zwernerman v. Rosenberg (Texas Sup. Ct.), 11 S. W., 150.

The pleadings of the defendant in error, while predicating upon an assumption of debt by Waggoner, state the facts, and, in addition to the prayer for specific relief, ask for other relief "either at law or in equity, special and general." We will not undertake to fully state the pleadings. We believe the petition sufficient as against a general demurrer to have authorized a recovery in this case against Waggoner in some sum of money, notwithstanding the jury findings as to rescission in Waggoner's favor, and we ought to reverse and remand rather than reverse and render the case, under the statute and authorities cited above.

It will be recalled that at the time of the meeting of the board of directors on September 27, 1920, the corporation was hopelessly insolvent; that it then ceased to transact business, and was for all practical purposes dissolved, although the certificate of dissolution was not filed until long after that meeting. Such being the status of the corporation's affairs, it is obvious that all of its assets, personal and real, became a trust fund for the payment of the debts of the corporation, upon which the defendant in error, as well as other creditors, had an equitable lien. 11 Texas Jurisprudence, p. 84, sec. 421 and cases in notes; 10 Texas Juris-

prudence, p. 680, sec. 70 and cases cited in notes; Lyons-Thomas Hardware Co. v. Perry Stone Mfg. Co., 86 Texas, 143, 24 S. W., 16, 22 L. R. A., 802 Id., 88 Texas, 468, 27 S. W., 100; Lang v. Daugherty, 74 Texas, 226, 12 S. W., 29; Orr & Lindsley Shoe Co. v. Thompson, 89 Texas, 501, 35 S. W., 473; Wright v. Euless, 12 Texas Civ. App., 136, 34 S. W., 302; Rogers v. East Line Lumber Co., 11 Texas Civ. App., 108, 33 S. W., 312; Lakeside Irr. Co. v. Buffington (Texas Civ. App.), 168 S. W., 21; Advance-Rumley Thresher Co. v. Moss (Texas Civ. App.), 213 S. W., 690. All of the directors, including Waggoner and Greene, became trustees in possession of this property, whose duty it was to see that the assets of the corporation were devoted to the payment of the debts of the concern. Tobin Canning Co. v. Fraser, 81 Texas, 407, 413, 17 S. W., 25; 11 Texas Jurisprudence, p. 23, sec. 372; Leyhe v. Leyhe (Texas Civ. App.), 220 S. W., 377; Thompson on Corporations (3rd ed.), vol. 8, sec. 6560; Authorities supra. In the payment of these debts they could not prefer one creditor over another, in the absence of a previously executed contract. 11 Texas Jurisprudence, p. 84, sec. 421 and cases in the notes; Authorities supra; Fowler v. Bell, 90 Texas, 150, 37 S. W., 1058, 39 L. R. A., 254, 59 Am. St. Rep., 788; Lang v. Dougherty, 74 Texas, 226, 12 S. W. 79; Lyons-Thomas Hdw. Co. v. Perry Stone Mfg. Co., 86 Texas, 143, 24 S. W., 16, 22 L. R. A., 802 Id., 88 Texas, 468, 27 S. W., 100; Thompson on Corporations (3d ed.), vol. 8, secs. 6131, 6132, 6133.

We think the board of directors, as directors and trustees, had the right to sell the property to Greene or Greene and Waggoner, in order to have the debts of the corporation paid; but the property passed, under the facts of this case, charged with an equitable lien in favor of the creditors of the corporation, dischargeable only upon the payment of the creditors in full or pro rata from the funds received from the corporate property, in the absence, of course, of some element of estoppel on the part of the creditors. Clevenger v. Galloway & Garrison (Texas Civ. App.), 104 S. W., 914 (writ refused); National Bank of Jefferson v. Texas Investment Co., 74 Texas, 421, 12 S. W., 101; Panhandle National Bank v. Emery, 78 Texas, 498, 15 S. W., 23, 10 Texas Jurisprudence, p. 683, sec. 71; 11 Texas Jurisprudence, p. 87, sec. 422; Thompson on Corporations (3d ed.), vol. 8, secs. 6239, 6247, 6248. Moreover, the directors were charged with the duty of seeing that the creditors of the corporation were either paid in full or that they were paid pro rata out of the funds received from the assets of the corporation. This was a duty laid upon Waggoner as well as the other directors by the law. The mere fact that Greene, or Greene and Waggoner, may have assumed the payment of the debts of the corporation, would not relieve the directors of this duty, in the absence of an estoppel on the part of the creditors. Authorities supra; Darcy v. Brooklyn & New York Ferry Co., 196 N.

Y., 99, 89 N. E., 461, 26 L. R. A. (N. S.), 267, 134 Am. St. Rep., 827, and cases cited in the notes.

In the last cited case the New York Court of Appeals held that the directors of a corporation, who without notice to creditors had sold the entire corporate property to a purchaser who assumed the payment of the creditors, were liable to the creditors. In discussing the question that court in part said:

"No notice of the transfer was given to creditors, nor was any property retained by the directors with which to meet the plaintiff's claim or any other indebtedness which might legally be established against the corporation. At the time of the transfer, however, the purchasing corporation did agree to assume all the then existing debts and liabilities of the selling corporation. This agreement was the sale provision made by the directors for the payment of the creditors of the corporation which they represented.

"The narrative of the transaction leaves no doubt that what the directors of the Brooklyn & New York Ferry Company sought to bring about was a voluntary dissolution of the corporation, and the distribution of its assets, without taking the steps to that end which are prescribed by law. Notwithstanding their failure to proceed under the statute, they contend that a creditor of a corporation has no standing to compel them to pay a claim of which they were ignorant at the time of the transfer of the corporate property, in the absence of proof of actual fraud on their part. It is true that there is no allegation or finding of fraud; but there is evidence that the officers of the company had knowledge of the injury to the plaintiff which was the basis of his claim. The liability of the directors is predicated, not on the ground that their action in making the transfer was fraudulent, but upon the proposition that it is a violation of duty on the part of the directors of a corporation, to devest it of all its property without affording a reasonable opportunity to its creditors to present and enforce their claims before the transfer shall become effective. This is the proposition involved in the judgment in this case, which we are asked to reverse. We think it is sound in law, and should be upheld.

\* \* \* \* \* \*

"A creditor cannot be deprived of his equitable lien thereon by an agreement between the corporation and a transferee of the property that the latter shall assume and pay all the corporate debts. The consent of the creditor to accept the substituted debtor is essential to make such an agreement valid as against him. Hence the fact that the Brooklyn Ferry Company of New York agreed with the Brooklyn & New York Ferry Company to assume all the debts of the latter did not justify the directors of the selling corporation in disposing of its assets without making some other provision for the payment of its creditors. The plaintiff was left in the position of the creditor so aptly described by Werner, Jr., in Hurd v.

New York & Commercial Steam Laundry Co., 167 N. Y., 89, 95, 60 N. E., 327, 328: 'When he demands payment of his claim, he is referred to the empty shell which is all that is left of the live corporation whose tangible assets constituted a trust fund for the payment of his debt, at the time of its creation.' It is not necessary to determine precisely what the directors of a corporation must do in order to protect themselves against liability when they undertake to devest it of all its property, and practically dissolve it, without taking the proceedings for a voluntary dissolution which are prescribed by law. For the purposes of the present case, it is enough to say that they were bound to give some notice to creditors of the proposed transfer, and they gave none whatever. We think that their failure to do so was 'a violation of their duties', under subdivision 2 of section 1781 of the Code of Civil Procedure, and rendered them liable to the plaintiff for the amount of the claim which he established against the corporation as having accrued before the transfer. The motives which induced the omission are immaterial. The entire assets could not lawfully be set over by the selling corporation to the purchasing corporation, until some sort of opportunity had been given to the creditors of the latter to present and enforce their claims. The neglect to afford this opportunity is what constituted a violation of the directors' duties, and it matters not what they may have supposed they were not required to do any more than they did for the protection of creditors."

In so far as the case before us is concerned, the record fails to disclose any notice to creditors of the transfer of the corporate assets to Greene, or to Greene and Waggoner. The minutes of the directors' meeting of September 27, 1920, show that notice was to be sent to the stockholders, but they are silent as to any such action with reference to creditors. Apparently the directors took no steps to see that the vendee of the corporate assets paid the creditors, either in full or to the extent of the value of the assets of the company.

Clois L. Greene did not pay the creditors of the corporation, or at least did not pay all of them. In fact, he became a bankrupt, and therefore unable to pay. Neither Waggoner nor other directors, in so far as this record shows, took any steps to see that the assets of the corporation transferred to Greene were devoted to the payment of the debts of the corporation. In fact, the record fails to show what became of the real properties of the concern. Some months after the transfer to Clois L. Greene, it appears that Greene gave a bill of sale to a large part of the personal property to Waggoner, and the latter, in consideration therefor, paid a debt, or furnished the money with which to pay a debt of the corporation, to the Wichita State Bank, of which Ferguson was president, in the sum of $60,000. Under the facts of this case, it is a justiciable issue as to whether or not it was the duty and obligation of Waggoner, as a director, and therefore as a trustee for the creditors of this failed cor-

poration, to see that the amount thus realized from the sale of the property transferred to him by Green was paid pro rata to the creditors of the corporation; and if his failure to do so damaged its creditors, whether or not he is responsible to them to the extent of the amount realized for these assets. Moreover, whether or not Waggoner took the property received from Greene charged with an equitable lien in favor of the creditors, dischargeable only by a proper distribution by him and the other directors of the funds thus realized from the corporate assets, whether or not he converted that property so that it could not be or cannot be reached by creditors, and if so whether or not he should be responsible for its conversion to the defendant in error, are all justiciable questions under the record now before us.

What we have said as to the possible liability of Mr. Waggoner as a director of the corporation and trustee for the creditors for failure to see that the assets delivered to Clois L. Greene were devoted to the payment of the debts of the corporation on a pro rata basis, applies, in so far as the record before us shows the facts, to all the directors. The liability of Waggoner, by reason of the purchase of the assets and their conversion, if he did convert them, is another and different issue, which might not involve all the directors.

On the whole, it may be said that the record before us presents a justiciable issue as to the liability of Waggoner apart from his liability on a contractual assumption of debt, which has not been fully developed. We are clear, therefore, we ought not to render the case.

The judgments of the Court of Civil Appeals and district court, as to all parties, are accordingly reversed, and the cause remanded to the district court.