**CENTRAL NAT. BANK et al. v. DALLAS BANK & TRUST CO.**

No. 11575.

Court of Civil Appeals of Texas. Dallas.
Nov. 4, 1933.

Rehearing Denied Dec. 9, 1933.

W. J. Rutledge, Jr., of Dallas, for appellants.

McBride, O'Donnell & Hamilton, of Dallas, for appellee.

JONES, Chief Justice.

Appellee, the Dallas Bank & Trust Company, trustee, instituted this suit in a district court of Dallas county, as trustee for the estate of Belle C. Shumard, deceased, against appellants, Central National Bank and Central Trust & Savings Bank, to recover an alleged default on a rental contract, and also for an immediate appointment of a receiver, to take charge of the properties owned by appellants. After due notice and hearing, a receiver was appointed, but a supersedeas bond was allowed by the court, and executed by appellants, for which reason the receiver will not operate, pending this appeal. Appellants have duly perfected an appeal to this court. The following are the necessary facts:

On May 8, 1914, a lease contract was duly executed between Mrs. Belle C. Shumard, as owner and lessor of business property, in the city of Dallas, and known as numbers 1513–1515 Main street, and Central State Bank & Trust Company, a banking corporation, as lessee. The lease was to become effective on September 1, 1914, and was to run for a period of twenty-five years from said date, ending on September 1, 1939. The total consideration for the lease is the sum of $290,000; for the first ten years, the lessee was to pay $11,000 per year, in equal monthly installments, and, for the remaining fifteen years, the sum of $12,000 per year, in equal monthly installments; each monthly installment was to be paid, in advance, on or before the 10th day of each succeeding month. As additional, the lessee was to pay, promptly, "all taxes and assessments, water rents and all governmental charges, of every kind, which may be levied, charged and imposed upon the demised premises, or any part thereof, or any improvements thereon, for and during each and every year after September 1st, 1914, and during the continuance of the lease." The fifth paragraph of the lease contract reads:

"The Lessee shall have the right to assign this lease or to convey any estate or portion thereof herein granted, the assignee, or assignees, either of the entire lease or any purchaser of any estate granted hereunder becoming automatically substituted for the Lessee as to its rights upon the making of any such conveyance or assignment or lease, and shall thereby as between Lessee and such

party be bound by all the terms, conditions and convenants of this instrument. Lessee may also sub-let any or all of the demised premises as it may deem proper. Each assignee or sub-tenant or grantee, immediate or remote, shall have like power of assignment and sub-letting. It is distinctly understood, however, that no sub-letting of a part or the whole of said premises and no sale by Lessee of its interest therein shall release or in any way affect Lessee's obligations to Lessor as herein set out."

The twelfth paragraph of the lease contract, reads:

"This lease, with its provisions, shall bind and inure to the benefit of the immediate parties hereto, and their respective heirs, assignees, executors and administrators, whether or not other than immediate parties are named elsewhere in any portion of the contract."

In 1923, Mrs. Belle Shumard died, testate, and by her will made the Dallas Trust & Savings bank executor and trustee, for the benefit of certain relatives. Dallas Trust & Savings Bank qualified as such trustee, and has since continuously administered the trust. Its corporate name was changed in January, 1930, to Dallas Bank & Trust Company, and, since said date, has administered the trust under such name. In 1916, Central State Bank & Trust Company changed its name to Central State Bank, and continued to execute the terms of the lease under such name until, in 1925, it ceased to do business under that name, and there were organized two successor corporations, with substantially the same stockholders and directors, to carry on its business with its assets, the names being, respectively, Central National Bank in Dallas and Central Trust & Savings Bank, appellants herein.

The capital stock of Central State Bank was $1,000,000. By a proper procedure, this capital stock was reduced to $700,000, about the time of, and incident to, its reorganization into two corporations, $500,000 of this capital stock was transferred to the Central National Bank in Dallas, and became its capital stock. The remaining $200,000 of the capital stock of the Central State Bank was transferred to, and became the capital stock of, the Central Trust & Savings Bank. The assets of the Central State Bank were transferred to the successor banks in the same proportion. No consideration passed to the stockholders of the Central State Bank in this reorganization, other than the stockholders of said bank were issued stock, either in the one or the other of the two successor corporations. No conclusion can be drawn other than that appellants, the two successor corporations, were organized to continue the business of the Central State Bank, which immediately ceased as a banking cor-

poration on the completion of the organization of the two successor banks.

At the time this lease contract became effective, the lessee was occupying the Shumard property as a bank building. Some time thereafterwards, the occupation of this property for use of the bank ceased, and another building, on the opposite side of Main street, became the domicile of the Central State Bank, and, likewise, the domicile of appellants, after their organization. In 1925, when appellants came into existence, as successors to the Central State Bank, the Shumard property was drawing from subleases a materially larger rental than was being paid under the lease contract. In consequence thereof, this lease contract became, and was carried as an asset, rather than a liability. Later, when the present depression came to be felt, the subtenants in the Shumard property paid an amount materially less than provided for in the lease contract and it was carried as a liability.

When appellants were organized, as successors of the Central State Bank, Central National Bank in Dallas purchased the building that had been occupied by the Central State Bank, and, by an agreement between the two corporations, Central Trust & Savings Bank assumed the obligation of the Shumard lease, and the rentals thereafter paid to appellee on the Shumard building were paid by Central Trust & Savings Bank. Appellee was not a party to this agreement, and did not know, until after default in the rent contract, shortly before this suit was filed, that Central Trust & Savings Bank alone had assumed this obligation, and that an effort was thereby made to release Central National Bank in Dallas from such obligation. When informed of this status, in respect to the obligation of the lease, appellee declined to be bound by the contract between appellants, and informed the Central National Bank in Dallas that it would hold appellants to the lease contract.

The record shows that the organization of appellants, the two successor banks, with the assets of the Central State Bank, was regular, and that the proper procedure to effect such a result was duly carried out. In this organization, the Central National Bank assumed approximately $3,500,000 in deposits of the Central State Bank, and the Central Trust & Savings Bank assumed approximately $1,000,000 of the deposits of such bank. Of the assets of the Central State Bank, there was transferred to the Central National Bank $4,289,517.24, and the remaining assets of $1,332,767.76 were transferred to the Central Trust & Savings Bank. Beginning with the respective deposits in the above-named amounts, and with the respective assets, in the above-named amounts, these two banks operated a banking business for approximately eighteen months, when in the latter part of the year 1926, each bank ceased operation. By an agreement with the North Texas National Bank, it assumed the obligation of the existing deposits and had transferred to it by appellants sufficient assets to satisfy such obligation to the depositors.

Following the cessation of business by appellants, a liquidating officer was duly selected, and, for approximately seven years, he has been in charge. At the time of the filing of this suit, except for the collection of some outstanding obligations due it, the Central National Bank in Dallas has had no income, except that of rent from its bank building. The evidence shows that the net income of these rents is approximately $34,000. The income from the Central Trust & Savings Bank has been rent from the Shumard property and some other rentals from other properties owned by it, and also collections that would come in from outstanding indebtedness incurred in its banking business. At the time the banks went into liquidation, there was an outstanding lien indebtedness against the Central Bank building of approximately $269,000. This indebtedness has been reduced $15,000 a year for seven years since said time. The lien indebtedness on the bank has not matured, save as to these annual payments that have been met. The evidence discloses that the Central National Bank has paid all of its matured indebtedness up to the time of the trial of this suit, except the contested indebtedness owing to the Shumard estate. The paper value of the assets still owned by the Central National Bank in Dallas is far in excess of its indebtedness. The record does not disclose what was the market value of these assets at the time of the trial, other than it asserts such indebtedness is less than its assets. The Central Trust & Savings Bank has defaulted in some of its indebtedness, though the paper value of its assets is shown to exceed its indebtedness, but the market value is not shown.

The petition, on which the receivership is based, is necessarily quite lengthy, but briefly, the salient points made by appropriate allegations may be stated, as they are summed up by appellee in its brief, as follows:

"(1) That the two defendants now in liquidation were created solely for the purpose of taking over the assets of Central State Bank. (2) That these two corporations' capital consisted solely of the assets of the Central State Bank, which they succeeded. (3) That the stockholders, directors and officers of the two defendant corporations were substantially the same as those of the Central State Bank. (4) That no money was paid by either of the defendant corporations for any of the assets thus taken over from the Central State Bank. (5) That an equitable lien on the assets of the Central State Bank resulted from the transaction thus executed. (6) That the two defendant corporations had been under-

going liquidation since 1927, had refused to pay the rentals due as above outlined, and had refused to pay taxes in the sum of $4,000 which were delinquent, that their assets were all under heavy mortgages, and that through the process of liquidation the assets and funds of the two corporations were being dissipated, and that imminent danger of insolvency impended."

The undisputed evidence discloses that, at the time of the trial, the Shumard rental contract was in default in approximately the sum of $6,000 and that such default would continue for an unknown period of time; that taxes on the Shumard property were delinquent in the sum of $4,000, with no showing as to when this delinquency would be met, or no showing as to whether subsequent taxes, falling due each year during the life of the lease, would be paid when same was due; that the expense of liquidation was being paid out of the income, five-sevenths by the Central National Bank in Dallas and two-sevenths by the Central Trust & Savings Bank, with no showing as to when the property of appellants would be subjected to the payment of the debts, and to the payment of stockholders, in the event there should be a surplus after the payment of the debts. There is no attack as to inefficiency made on the present liquidating agent, who has been in charge since April 1, 1927, and no such attack was made on the short time in which the other liquidating agent handled the property. Appellee, in the petition and its brief, does attack the manner in which the liquidation is being carried on, in that no effort is being made to realize upon the assets of appellee, in order to meet appellee's claim, and does allege that the liquidation is necessarily expensive and is being drawn out so long that the assets are becoming dissipated in this way.

By appropriate, and necessarily lengthy pleading, appellants answer the suit to the effect that neither corporation is insolvent, or in imminent danger of insolvency, and that all matured indebtedness of Central National Bank in Dallas has been met as it matured. It specifically denies any obligation on the rent contract. In respect to the Central Bank & Trust Company, it admits default in the indebtedness alleged by appellee to be due the Shumard estate, but denies that it is insolvent, or in imminent danger of insolvency, and alleges specific facts in reference to its assets to disprove appellee's allegation in this respect. The proof in reference to the allegation as to solvency, or imminent danger of insolvency, has been stated above.

The Central National Bank in Dallas alleges in effect that the Shumard lease contract was assigned by the Central State Bank to the Central Bank & Trust Company at the time the latter was organized, and that there-

by the Central Bank & Trust Company alone became obligated on the lease contract; that, from the time appellants began operation until default was made, the appellee accepted monthly checks drawn by the Central Bank & Trust Company, in payment of the monthly rental, and never complained or objected to the fact that the rent was being paid solely by such institution, but, at all times, acquiesced in such disposition of the rental obligation; that, if appellee had any cause of action against the Central National Bank in Dallas on the rental obligation, such cause of action matured when, by written assignment from the Central State Bank, the Central Bank & Trust Company became solely obligated on such contract, and that such cause of action was now barred by limitation, which fact it specifically plead. The Central National Bank in Dallas also plead estoppel based on the theory, that, by accepting the rent solely from the Central Bank & Trust Company and acquiescing in its discharge of this indebtedness for approximately seven years, appellee thereby induced the Central National Bank in Dallas to believe that it had agreed to such assignment of the lease, and is now estopped to assert such claim against it.

It is also insisted by appellants, by appropriate allegations in their pleading and by proper assignments of error and propositions of law in their respective briefs, that, as the evidence conclusively shows that each has property subject to execution sufficient to satisfy the debt, there is neither statutory or equitable ground for a receivership. Appellants also plead that their respective charters have never been forfeited, and the evidence establishes this allegation as a fact.

There are two primary questions to be considered on this appeal. They are both properly raised and discussed, pro and con, by the very able briefs of the respective parties. These questions are: (1) Is the Central National Bank in Dallas relieved from liability on the rental contract on any of the grounds alleged in its pleading? (2) Did the trial court abuse its discretion in appointing a receiver for the properties of appellants? These two questions will be discussed in the order named.

■ Preliminary to the discussion of either question, it must be stated, and borne in mind, that the transfer of the assets and the business of the Central State Bank to appellants is not a sale of the assets of the former corporation to the successor corporations, but that, at most, the various transactions that culminated in the organization of appellants as two separate and distinct banking corporations, constituted a mere division of the assets and business of one banking corporation into two banking corporations, for a continuance of the business of the Central State Bank. National Bank v. Texas Inv. Co.,

74 Tex. 421, 12 S. W. 101; Hibernia Ins. Co. v. St. Louis & N. O. Transp. Co. (C. C.) 13 F. 516; J. I. Kelley Co. v. Pollock & Bernheimer, 57 Fla. 459, 49 So. 934, 131 Am. St. Rep. 1101, cited in 32 L. R. A. (N. S.) 617; Parsons Mfg. Co. v. Hamilton Ice Mfg. Co., 78 N. J. Law, 309, 73 A. 254; Grice v. American Ry. Exp. Co. (Tex. Civ. App.) 248 S. W. 82; Cattle Raisers' Loan Co. v. Sutton (Tex. Civ. App.) 271 S. W. 233; Waggoner v. Herring-Showers Lumber Co., 120 Tex. 605, 40 S.W.(2d) 1.

■ The original lessee was the Central State Bank & Trust Company. It was succeeded by the Central State Bank, and the Central State Bank, under the terms of the quoted paragraphs of this lease, became bound on the lease contract in the same manner as its predecessor was bound; in other words, it became a party to the lease contract, and bound by all of its terms. When the stockholders, officers, and directors of the Central State Bank elected to carry on the same business with the same assets and the same obligations, through two new corporations, to be organized with its assets and to operate with its depositors, these two successor banks each thereby became obligated under all the terms of the lease contract, as though each had joined in its execution. Appellants, by any character of agreement between themselves, without appellee being a party thereto or without having knowledge thereof, could not affect appellee's rights under the terms of the contract. The action of appellants, in having one of them to assume the obligation of the contract, is not a fraud on appellee's rights, because it in no way affected such rights. Its suit against appellants is a suit on a contract and not a suit because of any fraudulent transaction on their part. Appellee had no complaint as long as it received the rent, in accordance with the contract, and, consequently, no cause of action arose in its favor until after default, and this suit was timely filed after such default. Nor could appellee be held to have acquiesced in the arrangement of the payment of the rent made between appellants, because it accepted a check written by one of them. It could look to either or to both of appellants for its rent, and there is no question of estoppel raised by the evidence. We, therefore, overrule appellants' contention in this respect.

■ The second question, that of the right to a receiver, is much more serious. The trial court, after full inquiry, adjudged that there was presented a case warranting the appointment of a receiver. In the appointment of a receiver, the trial judge exercised a discretion lodged in him by law, and it is only when there is a clear abuse of such discretion can this court hold that error was committed. After giving the question very careful consideration, the members of this court are not in agreement; the majority are of the opinion that there was such an abuse of discretion that calls for the reversal of this case and the setting aside of the order appointing the receiver. The writer is of the opinion that such an abuse of discretion by the trial court is not shown in this case, and that the judgment, appointing the receiver, ought to be affirmed. The view of the majority is controlling, and announces the conclusion of this court in this respect, and the writer is commissioned to state the reason for such conclusion.

Under article 2293, R. C. S., any judge of a court of competent jurisdiction is authorized to appoint a receiver in the following cases:

"1. In an action by a vendor to vacate a fraudulent purchase of property; or by a creditor to subject any property or fund to his claim; or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured.

"2. In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed or materially injured; or that the condition of the mortgage has not been performed and the property is probably insufficient to discharge the mortgage debt.

"3. In cases where a corporation is insolvent or in imminent danger of insolvency; or has been dissolved or has forfeited its corporate rights.

"4. In all other cases where receivers have heretofore been appointed by the usages of the court of equity."

■ The first three sections of the receivership statute are termed statutory grounds for a receiver, and exist independent of the "usages of the court of equity." Appellee insists that, under section 3, authorizing the appointment of a receiver for an insolvent corporation, or for a corporation in imminent danger of insolvency, the action of the trial court is justified. We cannot agree to this contention. Neither of the corporations is insolvent, for each is possessed of property subject to execution in excess of its total indebtedness. Under this record, appellee can prosecute its suit to judgment and collect its indebtedness, by execution. Nor is it believed that either corporation is in imminent danger of insolvency. The record shows that the property is being carefully managed by a liquidating agent, and that the matured indebtedness of Central National Bank in Dallas is being met as it matures. It does show, however, that appellee's indebtedness has not been met by Central Trust & Savings Bank, as it matured, but under our

holding that Central National Bank is obligated on this indebtedness, there is ability to meet same. Under the facts of this case, we do not think that such default is sufficient to authorize the court to appoint a receiver, because a judgment for the indebtedness clearly can be collected on execution. People's Inv. Co. v. Crawford (Tex. Civ. App.) 45 S. W. 738; Galvin v. McConnell, 53 Tex. Civ. App. 486, 117 S. W. 211; Kokernot v. Roos (Tex. Civ. App.) 189 S. W. 505; Delcambre v. Murphy (Tex. Civ. App.) 5 S.W. (2d) 789, 790; San Antonio Suburban Irrigated Farms v. Bexar-Medina-Atascosa Counties Water Imp. Dist. No. 1 (Tex. Civ. App.) 49 S.W.(2d) 511; City National Bank v. Dunham, 18 Tex. Civ. App. 184, 44 S. W. 605; Floore v. Morgan (Tex. Civ. App.) 175 S. W. 737; Continental Trust Co. v. Brown (Tex. Civ. App.) 179 S. W. 939.

■ Appellants had the right to go into voluntary liquidation and to select a person whom they deemed best suited as liquidating agent. This right was exercised and, in the latter part of December, 1926, a liquidating agent was named, and in April, 1927, the present liquidating agent was named and he has managed and controlled the property of appellants since said date. The only criticism leveled against his management of the liquidation of these two institutions is (a) the long delay in winding up the respective estates, and (b) the continued and heavy expense incident thereto. It is true that approximately for seven years these estates have been in liquidation without accomplishing such result and, ordinarily, this should be considered an unusual time to accomplish the voluntary liquidation undertaken. However, appellee received promptly the monthly rentals, until the latter part of 1931 and until the default at this time could not be heard to complain of the delay. As is well known, the country generally, since 1931, has been in a wide spread financial depression, and a hasty winding up of this liquidation, by placing on the market the various properties of appellants, would · work a great injury and hardship both to stockholders and to creditors. It could hardly be asserted that the expense incurred by the liquidating agent is a greater expense than would be incurred by a receiver. Under the circumstances of this case, we do not believe that the fact that the liquidation has been carried on for approximately seven years is a ground for a receiver.

■ It is not believed that the second clause of subdivision 3 of the receivership statute (article 2293), above quoted, which authorizes the appointment of a receiver when a corporation "has been dissolved or has forfeited its corporate rights," can be applied to this case. While appellants have ceased to be going concerns, yet their dissolution as corporations has not yet been accomplished and the charter rights of neither has been forfeited, as we understand the meaning of that term in the receivership statute. We understand such term to mean the loss by a corporation of its charter and all rights thereunder, because of the doing of something prohibited by law, or the omission to do something required to be done by law, for which act of omission or commission the loss of the charter, and the rights thereunder, is the penalty assessed by law. So, in our opinion, the statutory grounds for a receiver does not exist.

■ It plainly appearing from the record that appellee can pursue its claim to judgment and collect same under execution, it cannot be contended that the fourth ground for a receiver exists, which authorizes the appointment of a receiver under the usages of a court of equity. The majority of this court is, therefore, of the opinion that the trial court abused its discretion in the appointment of a receiver, and that this cause should be reversed and the order, appointing a receiver, vacated, and it is so ordered.

### Dissenting Views.

The writer cannot agree to the disposition of the case by the majority, in respect to setting aside the order of the trial court in the appointment of a receiver, and the views therein expressed are the views of the majority of the court and not the views of the writer.

The writer is of the opinion that the learned trial judge did not err in appointing a receiver, and that the judgment should be, in all things, affirmed. In the latter part of 1926, after operating for approximately eighteen months as a national bank and as a state bank, respectively, appellants each ceased the operation of such business, transferred the obligation of each to its depositors, to the North Texas National Bank, together with the major portion of the assets of each to secure such respective obligations. The obligation to the creditors of each, except as to the depositors, was not taken care of, but remained the respective obligation of each of appellants. Appellants entered into a voluntary liquidation, which could only have been undertaken for the purpose of realizing upon the assets remaining in the hands of each and to discharge their respective obligations to creditors, and, as far as the remaining funds would permit, to discharge the obligation to their respective stockholders. Those creditors who did not have a contract lien are given, by law, an equitable lien upon such assets. National Bank v. Texas Investment Company, 74 Tex. 421, 12 S. W. 101; Hibernia Insurance Company v. St. Louis & N. O. Transp. Co. (C. C.) 13 F. 516; Waggoner v. Herring-Showers Lumber Co., 120 Tex. 605, 40 S.W.(2d) 1;

Vol. 8, Fletcher Cyclopedia Corporations, p. 8875, § 5248.

Fletcher Cyclopedia Corporations, supra, states the rule, as to the appointment of a receiver of a corporation which has disabled itself from carrying on its business: "On the other hand, mere cessation of business is not a ground, unless conditions are such that it is evident that business cannot or will not ever be resumed." This record shows that it is impossible for appellants, without a complete reorganization, ever again to prosecute a banking business.

Approximately seven years have elapsed since the beginning of this voluntary liquidation, and, so far as can be judged by this record, it is no nearer a consummation than it was at the beginning. Certainly, there is no promise that the liquidation will be consummated in the near future. Construing the intention of appellants by their conduct in the past, there will continue a monthly default in the payment to appellee of the rent due under the Shumard lease, and, as an inevitable consequence, appellee will be in default in discharging its duty as trustee, under the will of Mrs. Shumard, to the beneficiaries therein named. A large monthly expense will be incurred from the monthly income of appellants in the matter of paying the liquidating officer and his employees.

When a corporation has forfeited its corporate rights, and hence has ceased to be a going concern, and no longer capable of earning money, subdivision 3, art. 2293, supra, gives a statutory right to a creditor to apply to a court of equity for the appointment of a receiver to take charge of the assets of such corporation for the protection of such creditor and other creditors, for the purpose of winding up the affairs of such corporation in the manner allowed by law.

Have appellants forfeited their charter rights within the meaning of subdivision 3, as applied to the facts of this case? The Central National Bank in Dallas was chartered for the purpose of operating a national bank, it could legally operate no other business than that of a national bank, for this was the only right secured to it by its charter. The Central Bank & Trust Company was chartered to operate a state bank and trust company. It could legally carry on no other business. As we have seen, each appellant has disabled itself from carrying on the business authorized by its charter. By thus disabling themselves from carrying on the business authorized by their respective charters, they forfeited their charter rights just as certainly as would have been the case, had their charters been canceled, and thereby they have brought themselves within the meaning of subdivision 3 of the receivership statute. It is, however, urged that, even if this be true, it is not shown that appellee would suffer injury if the re-

ceivership be denied. The writer cannot agree to this contention. He thinks the evidence clearly made a fact issue in this respect, and it was for the trial court to determine such issue, for, otherwise, there would be a denial of a discretion lodged by law in such tribunal.

The writer, therefore, respectfully dissents from the view of the majority, in respect to the trial court having abused its discretion in appointing a receiver, and believes that the judgment, in all things, should be affirmed.

## On Rehearing.

LOONEY, Justice.

Appellee states that, while the holding of the majority establishes the liability of appellants for the payment of the rent claims sued upon, and that neither limitation nor estoppel is a legal defense thereto, that we failed to find that its claim is secured by lien, or that it is entitled to priority over unsecured creditors. Chief Justice JONES, in his dissent, expressed our opinion, as well as his own, when he said that, "Those creditors who did not have a contract lien are given, by law, an equitable lien upon such assets"; that is, the assets of the two banks; however, unless its rent claim is secured, either by contract or statutory lien, no reason exists, in our opinion, why appellee should be accorded priority over any other unsecured creditor of the banks.

Appellee further insists that we disregarded and refused to follow the former decision of this court in Ripy v. Redwater Lbr. Co., 48 Tex. Civ. App. 311, 106 S. W. 474, 477. The appointment of a receiver was sustained in that case on the ground that the defendant companies were in great danger of insolvency, and, on the further ground, as stated by Judge Rainey, that "both corporations had forfeited their corporate rights by the failure to pay their franchise tax. Rev. St. 1895, art. 1465. The forfeiture of corporate rights being designated by the statute, a ground for a receiver is conclusive on this question." It is obvious that the forfeitures involved in the Ripy Case were consummated without judicial ascertainment. Forfeiture is a loss suffered in consequence of having done or omitted to do a certain act, Myers v. State, 47 Tex. Civ. App. 336, 105 S. W. 48, 50; the words "penalty" and "forfeiture" are generally used synonymously and a statute that inflicts forfeiture for its breach is considered penal in nature. Southern R. Co. v. Inman, etc., 11 Ga. App. 564, 75 S. E. 908, 910. We fail to find any conflict between the former decision and our views expressed by Chief Justice JONES; speaking for the majority, he said: "We understand such term [forfeiture] to mean the loss by a corporation of its charter and all rights thereunder, because of the

doing of something prohibited by law, or the omission to do something required to be done by law, for which act of omission or commission the loss of the charter, and the rights thereunder, is the penalty assessed by law." That statement expresses our view and is, we think, in harmony with the weight of authority.

The charters of appellants have neither been forfeited nor has either corporation been dissolved, and, although in voluntary liquidation, each is at this time an existing corporate entity. Appellee contends, however, that these banks (one a national, the other a state) were in legal effect dissolved and forfeited their corporate rights, when they closed doors, ceased business, and went into voluntary liquidation, and that the appointment of the receiver was authorized under subdivision 3, art. 2293, R. S.

We cannot accept this view, for if it be conceded that the conduct of appellants justified forfeiture or dissolution, adjudication to that effect should have been made and penalty imposed by a court of competent jurisdiction; this has not taken place. The generally accepted doctrine announced in 7 R. C. L. 724, § 731, is that, "Although a corporation may forfeit its charter by an abuse or misuser of its powers and franchises, yet this can only take effect upon a judgment of a competent tribunal. Whatever neglect of duty or abuse of power the corporation may have been guilty of, it is perfectly clear that it has not lost its charter by forfeiture; until a judicial decree to this effect be passed, it will continue its corporate existence." The same doctrine was announced by our Supreme Court in Galveston, H. & S. A. Ry. Co. v. State, 81 Tex. 595, 17 S. W. 67, 70, in an opinion by Judge Gaines, who said: "It is universally held as a general rule that the forfeiture of the franchises of a corporation cannot be claimed, in a collateral proceeding, merely because a ground of forfeiture may exist. The forfeiture must be declared in a judicial proceeding instituted for the purpose. Whether such proceeding shall be taken or not depends upon the will of the state, for it has the election to enforce the forfeiture or to waive it. When the rights of the corporation come into inquiry in a collateral proceeding, the case is to be treated as if no ground of forfeiture existed, unless there has been a judgment so declaring in a direct action by the state. [Citing authorities.]" That this doctrine applies fully to banking corporations, see 3 R. C. L. 650, § 279, and authorities cited in notes 15 and 16. So, we conclude that subdivision 3, art. 2293, R. S., authorizing the appointment of a receiver, where a corporation is dissolved, or has forfeited its corporate rights, has no application to the facts of the instant case.

Aside from the questions discussed, we think it exceedingly doubtful, in view of the provisions of our national and state banking codes and kindred statutes, whether, under any state of facts, a court is authorized, at the suit of a creditor, to appoint a receiver of a banking corporation (state or national) with authority to administer its affairs and liquidate its assets, but as the question is not raised, we refrain from the expression of a definite opinion on the subject.

After a careful consideration, we think appellee's motion for rehearing should be overruled, and it is so ordered.

Overruled.

JONES, C. J., dissents.